# Pieper, Appellant, *v.* Union Traction Company.

*Negligence—Street railways—Look and listen—Collision between car and wagon.*

When a person driving a wagon with side curtains down, approaches a cross street on which a street railway is operated, it is his duty to be on the lookout for an approaching car, and when on the street, to continue to look until the track is reached, and a single glance when he reaches the flag crossing, out from underneath the cover of his wagon down the cross street, for but fifty or seventy feet, is a mere heedless glance, and not an adequate performance of the duty required by the situation. In such a case if the driver of the wagon does not look again or attempt to do so when he gets on the street and reaches the track, but sits back in his wagon within the curtained sides with the view of a coming car cut off and drives on until his wagon is struck by the car, he cannot recover damages from the street railway company for the injuries sustained.

MESTREZAT, J., dissents.

Argued Jan. 21, 1902. Appeal, No. 53, Jan. T., 1901, by plaintiff, from order of C. P. No. 4, Phila. Co., Dec. T., 1899, No. 818, refusing to take off nonsuit in case of John H. Pieper v. Union Traction Company. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for personal injuries.  Before
AUDENRIED, J.

The opinion of the Supreme Court states the case.

*Error assigned* was in refusing to take off nonsuit.

*Frederick J. Shoyer*, for appellant.—The rule to stop, look
and listen when applied to collisions occurring when crossing
electric railways on public streets and highways is in some par-
ticulars different than with respect to collisions while crossing
steam railroads : Ehrisman v. East Harrisburg City Pass. Rail-
way Co., 150 Pa. 180 ; Omslaer v. Pittsburg, etc., Traction Co.,
168 Pa. 519 ; Wheelahan v. Philadelphia Traction Co., 150 Pa.
187 ; Carson v. Federal Street, etc., Ry. Co., 147 Pa. 219 ;
Smith v. Electric Traction Co., 187 Pa. 110 ; Boehmer v. Trac-
tion Co., 194 Pa. 313 ; Kern v. Traction Co., 194 Pa. 75 ; Cupps
v. Traction Co., 13 Pa. Superior Ct. 630 ; Brown v. Traction
Co., 14 Pa. Superior Ct. 594 ; Darwood v. Traction Co., 189
Pa. 592 ; Raulston v. Traction Co., 13 Pa. Superior Ct. 412 ;
Callahan v. Traction Co., 184 Pa. 425 ; Downey v. Traction
Co., 161 Pa. 131 ; Conyngham v. Electric Motor Co., 15 Pa.
Superior Ct. 573.

The case clearly does not come within the principle of Car-
roll v. R. R. Co., 12 W. N. C. 348 ; Omslaer v. Traction Co.,
168 Pa. 519 ; Wheelahan v. Traction Co., 150 Pa. 187 ; Boeh-
mer v. Traction Co., 194 Pa. 313 ; Cupps v. Traction Co., 13
Pa. Superior Ct. 630 ; Ehrisman v. East Harrisburg City Pass.
Ry. Co., 150 Pa. 180 ; Brown v. Traction Co., 14 Pa. Superior
Ct. 594 ; Darwood v. Traction Co., 189 Pa. 592.

This case on all its facts certainly comes within the principle
of Downey v. Traction Co., 161 Pa. 131, Callahan v. Traction
Co., 184 Pa. 425, Raulston v. Traction Co., 13 Pa. Superior
Ct. 412, and Conyngham v. Electric Motor Co., 15 Pa. Superior
Ct. 573, and the judgment of nonsuit should be reversed.

*Thomas Leaming*, with him *Charles Biddle*, for appellee.—
It is contributory negligence not to look immediately before
crossing a track, and the learned court was correct in entering
a nonsuit : Burke v. Union Traction Co., 198 Pa. 497 ; Ehris-
man v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180.

Appellant's argument that the car must have been so distant that the plaintiff was excused from the duty to look is mathematically impossible and is without authority.

The authorities as to right-angle collisions between street cars and wagons in their chronological order are as follows : Thomas v. Citizens Pass. Ry. Co., 132 Pa. 504; Carson v. Federal St., etc., Ry. Co., 147 Pa. 219; Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180; Wheelahan v. Phila. Traction Co., 150 Pa. 187 ; Winter v. Federal St., etc., Pass. Ry. Co., 153 Pa. 26 ; Gilmore v. Federal St., etc., Pass. Ry. Co., 153 Pa. 31; Downey v. Pittsburg, etc., Traction Co., 161 Pa. 131 ; Omslaer v. Pittsburg, etc., Traction Co., 168 Pa. 519 ; Callahan v. Phila. Traction Co., 184 Pa. 425; Smith v. Electric Traction Co., 187 Pa. 110 ; Darwood v. Traction Co., 189 Pa. 592; Kern v. Second Ave. Traction Co., 194 Pa. 75; Boehmer v. Pittsburg, etc., Traction Co., 194 Pa. 313 ; Bornscheuer v. Traction Co., 198 Pa. 332; Burke v. Union Traction Co., 198 Pa. 497 ; Tyson v. Union Traction Co., 199 Pa. 264.

Opinion by Mr. Justice Brown, March 24, 1902:

The record in this case does not disclose the reason why the court below entered the judgment of nonsuit, but we assume it was on the ground of the contributory negligence of the plaintiff. According to his own testimony, he was so careless before crossing the track, and so reckless of his duty to protect himself from impending danger, that it would have been palpable error to have submitted his case to the jury. He testified that, on January 11, 1900, he was driving a two-horse wagon westward from Twelfth street, on Thompson street, in the city of Philadelphia ; that the wagon was a big, high seated one with curtains all down the sides, because it was raining; that, when he reached the flag crossing across Thompson street, on the east side of Thirteenth street, he gave one look " out from underneath the cover " of his wagon, down Thirteenth street, for a distance of fifty or seventy feet, to see if a trolley car was coming, and, seeing none within that distance, he sat back in the wagon, satisfied that he could cross the track without being struck; that, giving no further look, he went straight ahead, and the next thing he knew his wagon was hit. Hut-

ton, who was in the wagon with him, testified that it was necessary to stoop forward and look around the curtains to get a view of Thirteenth street from the south, the direction from which the car was coming.

The duty of the plaintiff, when he was entering Thirteenth street, was to be on the lookout for the approaching car, and, when on the street, to continue to look until the track was reached: Burke v. Union Traction Co., 198 Pa. 497 ; but he failed even to look as he should have looked when he was about to enter the street, and he did not look at all when his team was on it and came to the track. A single glance " out from underneath the cover" of his wagon, down the street for but fifty or seventy feet, was not such a looking as enabled him to see the danger into which he took his wagon an instant later; and this careless looking was in itself negligence. It was a mere heedless glance, and not an adequate performance of the duty required by the situation : Warner v. Peoples' Street Railway Co., 141 Pa. 615. After this careless look or glance he did not look again, or attempt to do so, when he got on the street and reached the track. On the contrary, he sat back in his wagon, between its curtained sides, with the view of Thirteenth street and the coming car cut off, and, with unconcern that amounted to recklessness, placidly drove on until his wagon was struck. In the reported cases, from Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180, down to Burke v. Union Traction Co., supra, there can be found no clearer case of contributory negligence. From the dilemma in which the plaintiff has placed himself not even the testimony of his witness, Collins, can extricate him. In what that witness said as to material matters he was so clearly mistaken, and his testimony was so manifestly incorrect, that the court would have been fully justified in instructing the jury to disregard it, if the case had been submitted to them : Bornscheuer v. Consolidated Traction Co., 198 Pa. 332.

Judgment affirmed.

Mr. Justice Mestrezat dissenting :

The facts of this case fairly deducible from the evidence may be briefly summarized as follows : Plaintiff, driving a two-horse wagon west on Thompson street, approached a street

railway crossing on Thirteenth street. As soon as he entered the fifty-foot street on which the railway cars were operated and where he could see an approaching car, he leaned forward and looked south from beneath the curtains covering his wagon, which extend only a short distance in front of the driver's seat, and saw fifty to seventy feet along the railway track. His horses at that time were near the track. He saw no car, and no warning of any kind of an approaching car was given. A car approaching Thompson street at that time could not have been within 500 feet of the crossing, considering the distance traveled by the wagon and the car from the time the plaintiff looked for a car and the time when his wagon was struck. Believing that he could cross in safety, he attempted to do so. He proceeded carefully with his foot on the brake and his horses under complete control. When his wagon was half way across the track, a street car was approaching from the south and was at Cabot street, 120 feet distant, and it could have been seen by the motorman. After the horses and the greater part of the wagon were beyond the track, the rear wheel of the wagon while on the west rail of the track was struck by a car running on a descending grade at an excessive rate of speed of fifteen miles an hour with such force as to release the horses and carry the wagon at least fifty-three feet. The car did not slacken its speed as it approached the crossing. The plaintiff's horses and wagon, after entering Thirteenth street, were in view of the motorman for at least a distance of 500 feet.

The case should have been submitted to the jury to determine the negligence of the defendant and the contributory negligence of the plaintiff. We think there can be little doubt that under the testimony the jury would have found that the company was running at a negligent rate of speed and was both reckless and negligent in approaching Thompson street. This was a populous part of the city. Between Girard avenue and Thompson street, Cabot and Stiles streets cross Thirteenth street. At the intersection of either of these streets with Thirteenth street, the car was likely to collide with some person or vehicle, hence it became the duty of the motorman and the conductor in control of the car to run at a rate of speed which would not endanger the safety of persons who, without being negligent themselves, were trying to cross Thirteenth street at

its intersection with those streets. These employees of the company disregarded their duty in this respect and wholly ignored the rights of pedestrians and other persons crossing at Stiles and Cabot streets, as well as of those traveling on Thompson street.

It is claimed that the plaintiff did not do his duty by failing to look the second time after entering Thirteenth street and for that reason, was not careful and prudent in approaching the railway tracks. But that ignores the fact that his horses were then practically on the track and he was in the act of crossing. There was no time for him to look again before he attempted to cross. If, however, instead of looking from the wagon, he had alighted and looked south on Thirteenth street, he would have seen that the approaching car at that time was at a sufficient distance from the crossing to enable him to pass it, if the car ran at the ordinary speed. Assuming that he had ascertained that fact by looking, what was his duty? According to the testimony, his horses were not more than about four feet from the railway track when he looked on entering Thirteenth street. Occupying that position and assuming that he saw a car approaching at a distance of 500 feet or much less, was it his duty to stop his team and remain there until the car had passed Thompson street? I know of no case in this court holding this to be his duty. He had a right to assume that the street car would be run at the usual speed and had a right to attempt to cross the street railway track with that assumption. Such has been held to be the law by this court. In the recent case of Callahan v. Traction Co., 184 Pa. 427, our Brother FELL, speaking for the court says: " The sum of the appellant's contention is that as the plaintiff saw the car and attempted to cross Thirteenth street ahead of it, he took the chance of being able to do so, and cannot recover. The chance which the plaintiff took was that of crossing the street in safety in advance of a car which approached at the usual rate of speed. It was not the chance of being run down by a car propelled at an unusually high rate of speed of which he had no notice, and which was not checked as the car approached the crossing. A person about to cross a street at a regular crossing is not bound to wait because a car is in sight. If a car is at such a distance from him that he has ample time to

cross if it is run at the usual speed, it cannot be said as a matter of law that he is negligent in going on." So, it is apparent that the fact that he did not look again or alight from his wagon and walk into Thirteenth street and look south, was not negligence on his part, nor did it cause his injuries. He would have driven over the street car track just as he did, although he had stepped out of his wagon, looked south on Thirteenth street and had seen the car approaching. It was at such a distance at that time that any prudent man would have been justified in crossing in front of it.

But when we take the testimony of Collins—and it is undisputed—we find that " the wagon was half way across the track" when the car was at Cabot street, 120 feet distant. The wagon is struck just as the rear wheel is on the west rail. The testimony, if believed by the jury, establishes clearly that the car was run at a most excessive rate of speed, beyond the rate at which it should run, and that it was the recklessness and carelessness of the employees in charge of that car that caused the accident, and not the negligence of the plaintiff. From Girard avenue, a distance of 500 feet, this wagon was in plain view of the conductor and the motorman in charge of the car. They could easily see the wagon approaching and crossing the track, and they could have prevented the collision by slackening the speed. It is evident, however, that they gave no consideration whatever to the rights of the plaintiff on that occasion.

If it is to be determined as a matter of law that the plaintiff under the circumstances of this case was guilty of negligence, there is no protection to the drivers of teams or to pedestrians from collision with railway cars at street crossings. Such a proposition wholly ignores the rights of the party crossing the track and overlooks the duty of the street car company operating its cars on the public streets of a city Both have rights at crossings. The street car company has the right to use its tracks without their being obstructed ; but the pedestrian has the right to cross a street without rendering himself liable to be run down by a street car which is disregarding its duty in running at an excessive rate of speed. It is the duty of one about to cross a street car track to approach it with care and to use his senses to avoid a collision. Where a person is about to cross the tracks of a steam railroad, he must stop, look and

listen; otherwise, he is guilty of negligence per se.   But the rule has not been extended to street railway crossings, and should not be.   It would deprive the public, to a great extent, of their right to the free use of the public streets of the cities of the commonwealth.   When a person is about to cross a street railway track, he should look for an approaching car.   If one is near, he should not attempt to cross in front of it; but if it is at a distance sufficient to justify him in believing that he can cross in safety before it arrives at the crossing, he may do so without the charge of negligence if he is injured by a car running beyond the ordinary rate of speed.   Such is the rule established in Callahan v. Traction Co., supra.   Applied to the case in hand, the plaintiff should have been permitted to go to the jury on his own and the defendant's negligence.

For the reasons stated, I would reverse the judgment of the court below.