CHARLES F. METZ v. ST. PAUL CITY RAILWAY COMPANY.[1]

December 12, 1902.

Nos. 13,175—(166).

## Negligence of Pedestrian.

Evidence considered, and *held* that the negligence of a pedestrian who was struck and injured by an electric car at a street railway crossing while passing in front thereof, as disclosed by the facts in this case, was so plain, as a matter of law, that the trial court was justified in directing a verdict for the street car company in his action for damages.

Action in the district court for Ramsey county to recover $10,260 for personal injuries, resulting from collision with defendant's street car. The case was tried before O. B. Lewis, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Charles N. Dohs* and *A. C. Wandrei,* for appellant.

*Munn & Thygeson,* for respondent.

LOVELY, J.

Action to recover for personal injuries sustained by plaintiff while attempting to pass in front of an electric street car in St. Paul on the night of December 14, 1901. At the close of the evidence the court ordered a verdict for defendant, and the only material question upon this review is whether there was evidence requiring the submission of the cause to the jury.

Defendant's railway tracks are laid upon Payne avenue, in the city of St. Paul, over which it operates its electric cars. On a still, clear, winter night, plaintiff and a friend left a saloon at the southeast corner of this avenue and Wells street about twelve o'clock, with the intention of walking along Wells street, and crossing the car tracks thereon. At the curb, before starting, the plaintiff looked toward the south, and saw the headlight of an electric car approaching in that direction. An estimate of its distance from the crossing at that moment was one hundred eighty-five feet, or about half a block, which must have been largely a matter of con-

[1] Reported in 92 N. W. 502.

jecture. Plaintiff and his friend, after observing the car, started to cross the avenue over the car tracks on the line of Wells street; and in doing so they were required to walk a distance of seventeen feet before reaching the first rail, after leaving the curb. It must be assumed upon this review that the car was moving very rapidly, and making considerable noise, which was easily distinguishable at the time; also that it was running at a greater than ordinary rate of speed, although such rate is not accurately fixed in the record. The plaintiff did not, in going forward after he had looked toward the approaching headlight, which was burning brightly, again turn his gaze in that direction; and at the very moment he stepped upon the track he was struck and injured by the street car, which had then reached, and was rapidly going over, the crossing.

While the rule applicable to travelers on highways, approaching steam railway crossings, requiring them to look and listen, does not apply with the same force to street railways, yet the distinction rests in a measure upon the fact that in the latter instance the use and occupation of the streets are equally open to pedestrians with the car company, and also that the mutual enjoyment of the use of highways and street car tracks is calculated to divert the attention of the traveler, by reason of the proximity of teams, pedestrians, and other obstacles at a place which, but for the presence of the car, the traveler would have the unqualified right to use at the time; but the pedestrian at such a place is not relieved from exercising some care in walking over the crossing, and where, as in this case, there was nothing to divert his attention from a danger of which he had previous warning, he was not justified in relying wholly upon a hurried estimate of the distance of the approaching car in the nighttime, or upon the presumption that it was not moving toward him faster than at its ordinary rapidity, when a mere glance in the direction from which he had already seen it should have satisfied him that he might have been mistaken in such estimate; and therefore the claim that, if the car had been running at an ordinary rate of speed, he would have had time to pass in front of it, does not, in our view, justify his conceded failure to look the second time before stepping upon the rails.

88 M.—4

Plaintiff could not, under the obvious difficulties that existed in calculating the distance of a moving headlight, tell accurately whether the car was at a greater or less distance than he apprehended. A second instantaneous glance of the eye to the south at any time after leaving the curb to go to the crossing would have apprised him of the real facts. The noise of the car, also, should have tended to put him on his guard. Yet he walked forward without looking or listening, when nothing distracted his attention from doing so, although either act would have saved him from the unfortunate result of his own disregard of common prudence in these respects. The knowledge of the approaching car, that it must go over the crossing very near the time when plaintiff would also be there, the obvious difficulty of estimating its distance, the fact that the night was clear and still, and also that the noise of the car could be easily distinguished, would seem to establish that, in starting forward from the curbstone to the crossing, plaintiff took chances which he might easily have avoided by a reasonable attention to these conditions, which he should have appreciated; and, upon the particular facts thus indicated, we think the learned trial court was right in holding that the plaintiff himself was negligent, even though the defendant might have been running its car at an extraordinary and improper rate of speed.

Order affirmed.