# Houston Brothers Company, Appellant, v. Consolidated Traction Company.

*Negligence—Street railways—Collision between wagon and car—Duty to stop at crossings.*

The duty to look for an approaching electric street car at a crossing is an absolute duty, and failure to do so is negligence per se. The duty is not performed by looking when first entering on the street, but continues until the track is reached.

The fact that a man is driving more than two horses does not relieve him from the duty of taking reasonable precautions to ascertain whether a car is approaching before he permits his leading horses to start to cross the tracks over which the public are, in the cars, transported.

In an action against a street railway company to recover damages for the destruction of horses and a wagon, a nonsuit is properly entered where the evidence shows that the team consisted of three horses, one leading, that the leading horse was two or three feet from the track when the driver reached the building line, and that if the driver had then looked, he would have seen the car, and could have stopped in time to prevent the accident.

Argued April 13, 1905.  Appeal, No. 213, April T., 1905, by plaintiff, from order of C. P. No. 2, Allegheny Co., Jan. Term, 1903, No. 321, refusing to take off nonsuit in case of Houston Bros. Company v. Consolidated Traction Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for the killing of two horses and the destruction of a wagon and its load.  Before SHAFER, J.

The circumstances of the accident are detailed in the opinion of the Superior Court.

*Error assigned* was the order refusing to take off nonsuit.

*A. S. Moorhead* of *Dunn & Moorhead*, with him *John Reed Scott*, for appellant.—The facts established by the testimony of plaintiff's witnesses bring this case within that class of cases, where the negligence of plaintiff or its employees, if any, was a question for the jury: Ehrisman v. Ry. Co., 150 Pa. 180; Gilmore v. Ry. Co., 153 Pa. 31; Haas v. Ry. Co., 202 Pa. 145; Conyngham v. Motor Co., 15 Pa. Superior Ct.

573; Davidson v. Traction Co., 4 Pa. Superior Ct. 86; Callahan v. Traction Co., 184 Pa. 425; Hamilton v. Traction Co., 201 Pa. 351; Wilson v. Traction Co., 10 Pa. Superior Ct. 325; Raulston v. Traction Co., 13 Pa. Superior Ct. 412; Ely v. P., C. C. & St. L. Ry. Co., 158 Pa. 233.

*James C. Gray*, with him *Clarence Burleigh* and *W. A. Challener*, for appellee.—The testimony clearly shows contributory negligence: Gilmore v. United Traction Co., 26 Pa. Superior Ct. 97; McPhillips v. Union Traction Co., 19 Pa. Superior Ct. 223; Potter v. Scranton Ry. Co., 19 Pa. Superior Ct. 444; Keenan v. Union Traction Co., 202 Pa. 107; Smith v. Electric Traction Co., 187 Pa. 110; Burke v. Union Traction Co., 198 Pa. 497; Moser v. Traction Co., 205 Pa. 481; Bobb v. Traction Co., 206 Pa. 265; Mease v. United Traction Co., 208 Pa. 434.

OPINION BY PORTER, J., July 13, 1905:

The plaintiffs brought this action to recover damages for the killing of two horses, the breaking of a wagon and the sewer pipe with which it was loaded, which resulted from a collision with one of the cars of the defendant company. The court below entered a compulsory nonsuit; which it subsequently refused to take off.

The accident occurred on Butler street in the city of Pittsburg, at the point where Forty-ninth street enters that thoroughfare from the north, opposite the Allegheny Cemetery. There was no evidence that the vehicle traffic in the street was heavy or unusual. The defendant company operates two street car tracks on Butler street, the west-bound track, leading towards the city, being on the northerly side of the street. The north rail of this track is distant from the north curb of the street eleven feet, and twenty-three feet from the building line. The car with which the collision occurred was running upon this track, towards the city. The team and wagon of the plaintiff company was in charge of two of their servants, a driver and an assistant who was sitting beside him on the wagon seat. The wagon was a heavy one and had a heavy load of sewer pipe; it was drawn by three horses, two wheelers and a leader to the point of the tongue. The distance from the head of the

lead horse to where the driver sat was twenty or twenty-one feet, and the total length of team and wagon was thirty-seven feet. The driver had stopped his team on Forty-ninth street, the head of the lead horse being ten or twelve feet north of the building line of Butler street. Leaving the team standing in that position on the easterly side of Butler street, he went into the back door of a store for the purpose of procuring a sack of feed for his horses, and having procured the feed he went through the store and out the front door on to Butler street. He testified that, when he stepped on the sidewalk of Butler street, he looked to see if the street was clear and that no car was coming, that he could see to Fifty-first street, which the plan offered in evidence shows to have been about 500 feet to the eastward. He testified that he then carried the sack of feed around the corner and back along Forty-ninth street, from thirty to thirty-three feet, put the feed on the wagon, climbed up on to the seat, gathered up his lines, his assistant climbed up beside him, and he then started to drive towards Butler street. What followed is thus described by the only witness, the driver, who testified as to the manner in which the team was managed: "I got out near Butler street, and the lead horse and the front quarters of him were just about going on the in-bound track, and I noticed a car coming down. The car was, as near as I could make it, it was near Fiftieth street; I could n't say the distance by looking at it, but certainly I seen there was no other way but for me to go across, and I took the whip and started the team at a lively gait, but I could n't make it, and the car catched me when the back team was about across, but they catched the front part of the wagon and they slid the wagon down along the track quite a distance, dragging the team under the car, and throwed the horses and tore the harness off it that is, off the lead horse." This was the history of the occurrence given by the witness in his own language, when asked to describe what had occurred, and there was no material modification by his subsequent examination and cross-examination, as to the details. He did testify that the lead horse was just stepping on the city bound track when he first noticed the car, and that when he started the team up with the whip they did not trot, but went at a fast walk "as heavy horses will go with the whip."

The witness manifestly intended to convey the impression that when he first saw the approaching car, when " the lead horse and the frontquarters of him were just about going on the inbound track," he had gone too far to stop, and, by turning the lead horse to one side or the other, permit the car to pass before proceeding. Accepting this as true, he had driven into a place of manifest danger, with full knowledge of the circumstances and conditions, without taking the precautions reasonably necessary to ascertain whether his crossing exposed the team of his employers and the passengers in any car which might be approaching to the perils of a collision. " There is always a duty to look for an approaching car, and, if the street be obstructed, to listen, and, in some situations, to stop:" Callahan v. Traction Company, 184 Pa. 425 ; Omslaer v. Traction Company, 168 Pa. 519. The look which the driver gave when he came out of the store on Butler street, before he started to walk back and get ready to start with his team, did not relieve him of the duty of further watchfulness. " The duty to look for an approaching car is an absolute duty, and failure to do is negligence per se. This duty is not performed by looking when first entering on the street, but continues until the track is reached;" Burke v. Union Traction Company, 198 Pa. 497. It was the duty of the driver to look for approaching cars just before he entered the track, the point of danger: Pieper v. Traction Company, 202 Pa. 100 ; Keenan v. Traction Company, 202 Pa. 107 ; Moser v. Union Traction Company, 205 Pa. 481 ; Bobb v. Union Traction Company, 206 Pa. 265 ; Gilmore v. United Traction Company, 26 Pa. Superior Ct. 97. If the team was so extended that the lead horse was on the track before the driver had reached a position where he could see whether a car was approaching, the unusual length of a team imposed upon those in charge of it the duty to exercise care according to the circumstances. The fact that a man is driving four, eight or twelve horses does not relieve him from the duty of taking reasonable precautions to ascertain whether a car is approaching, before he permits his leading horses to start to cross the tracks over which the public are, in the cars, transported. This driver took no precautions whatever as he approached the tracks until, according to his own testimony, it was too late for him to stop, and the only thing

to do was to take the chances of getting over. The authorities above cited conclusively establish that he must be held guilty of contributory negligence.

The evidence of negligence on the part of those operating the car was very slight. It clearly established that the motorman made strenuous efforts to stop the car, but might have justified an inference that he became confused, or was not skillful. There was no evidence that the car was running at a rate of speed unusual on that street. Several witnesses testified that the car was running fast, but it is a fact universally known that, except in the congested parts of cities, electric cars do run fast, and that they shall do so has become a public necessity. The driver of the team of the plaintiff company was not deceived by the speed of this car; he testified that he realized when he saw the car that he would have to whip his horses up to get over, "if it came at the speed she was coming," and that he saw the car was coming fast. If the testimony of this witness as to the length of his team was true, the head of the lead horse was still two or three feet from the track when the driver reached the building line. Had he looked then he could have seen the track as far as Fifty-first street, and he would have seen this car and known that it was running rapidly. Having a team of such unusual length, it was his duty to so approach the track that he could stop if necessary when he reached a point where he could see. Had he done this all danger would have been avoided. He evidently acted on the assumption that if he reached the crossing first he was entitled to go on, and that the duty of avoiding a collision rested entirely with the motorman; and acting on this assumption, with a full knowledge of the situation, he placed himself in a position of manifest danger. This constituted such contributory negligence as to be fatal to the right of the plaintiffs to recover: Smith v. Traction Company, 187 Pa. 110; Burke v. Traction Company, 198 Pa. 497; Mease v. United Traction Company, 208 Pa. 434.

The judgment is affirmed.