Argued March 10, decided April 5, 1910.

### DONOHOE *v.* PORTLAND RAILWAY COMPANY.

[107 Pac. 964.]

APPEAL AND ERROR—ASSIGNMENT OF ERRORS—ABANDONMENT.

1. Assignments of error not argued in the brief will be considered abandoned or waived.

STREET RAILROADS—COLLISION WITH VEHICLE—ACTIONS—SUFFICIENCY OF EVIDENCE.

2. In an action for injuries from a collision between a street car and plaintiff's vehicle, evidence as to the negligent operation of the car *held* sufficient to go to the jury.

STREET RAILROADS — OPERATION — NEGLIGENCE — VIOLATION OF SPEED ORDINANCE.

3. The purpose of an ordinance limiting the speed of a street car is to protect the public, which may assume that it will be observed, and the moving of a car at a greater speed than that permitted by the ordinance is evidence of negligence sufficient to go to the jury in an action for injuries from a collision with the car.

STREET RAILROADS — INJURY TO PERSONS ON STREET — CONTRIBUTORY NEGLIGENCE—EFFECT.

4. To recover for negligence caused by collision with a street car negligently running at a speed prohibited by ordinance, the injured person must not have been guilty of negligence proximately contributing to the injury.

STREET RAILROADS—CROSSING ACCIDENTS—DUTY TO LOOK AND LISTEN.

5. It is presumptively negligent for a pedestrian to attempt to cross a railway track without looking and listening, when, if he had looked and listened he would have discovered the approach of a car in time to have avoided injury, but he is not required to look and listen at any particular place or given distance from the crossing, but only to do so at the time and place necessary in the exercise of ordinary care.

STREET RAILROAD—INJURY TO PEDESTRIAN—CONTRIBUTORY NEGLIGENCE —QUESTION FOR JURY.

6. The question whether a pedestrian injured by a street car exercised ordinary care in looking for the car before attempting to cross the track is usually for the jury.

STREET RAILROADS—OPERATION—CARE REQUIRED.

7. Street railroad cars and the general public have an equal right to the reasonable use of the public highways, but there is a resulting mutual obligation resting upon each to exercise such right with reasonable care so as not to reflect injury upon another, and a street car company cannot, by running its cars at an unusual and unlawful speed at crossings, make its limited right a preferred right of way, nor can the driver of a vehicle escape responsibility for injuries resulting from his careless driving or lack of diligence.

STREET RAILROADS—OPERATION—APPROACHING CROSSINGS.

8. Operators of street cars must have the cars under such control at crossings so as to yield to the driver of a vehicle the right to the use of a crossing acquired by him by reaching the crossing while the car is at such distance therefrom that it can be stopped in time to allow him to pass in safety.

STREET RAILROADS—CROSSING ACCIDENT—NEGLIGENCE.

9. When plaintiff's team reached the curb of a street on which there was a street railway, the rear of the wagon was about 35 feet distant from the center of the nearer track, and the team was traveling about six miles an hour. An approaching car on that track was then about 140 feet distant, and neither plaintiff nor the person with him observed that it was moving at an unusual speed. *Held*, that it could not be said as matter of law that the car was so close that reasonable men would say that plaintiff attempting to cross the track was not acing as a reasonably prudent man should act under the circumstances; and hence plaintiff was not negligent as matter of law.

STREET RAILROADS—CROSSING ACCIDENT—ACTIONS—INDEFINITE CHARGE.

10. In an injury action by a driver struck by a street car at a cross-ing, a charge that it was not enough for a driver to look and listen for a car when he is some distance from the track without making any further effort to do so, and if a driver simply looked for a car when he is at a considerable distance from the track, and then drove onto the track without taking further precaution, he was not in the exercise of ordinary care, was too uncertain and indefinite as to the facts assumed upon which to base a definition of ordinary care and erroneously confined the definition of such term to the determination of a single fact, instead of all sur-rounding circumstances.

STREET RAILROADS — CROSSING ACCIDENT — NEGLIGENCE — PROXIMATE CAUSE.

11. Though a driver of a vehicle approaching a street car crossing negligently failed to look a second time, after he entered the street on which the track was and drove upon the track, yet if, when the motorman in the approaching car saw or should have seen the wagon going upon the track ahead of the car, he had sufficient time and space within which to stop the car and prevent the collision, and failed to do so, his negligence would be the sole proximate cause of the injury, and the driver's act charged to be negligence would not be contributory thereto.

TRIAL — REFUSAL OF REQUESTS — REQUESTS EMBRACED IN GENERAL CHARGE GIVEN.

12. It is not error to refuse a request substantially covered by the general charge.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE SLATER.

This is an action by M. M. Donohoe against the Port-land Railway Company, to recover damages for personal injuries sustained by plaintiff on February 7, 1908, result-ing from being thrown violently from the seat of an ice wagon, drawn by two horses, caused by defendant's elec-tric street railway car colliding with the wagon as it was crossing the track at the intersection of Seventh and Burnside streets, in the City of Portland. The specific acts of negligence charged in the complaint are: That the car was being operated at a rate of speed prohibited by the law of the City of Portland, to wit, in excess of 12 miles an hour; that defendant operated the car at an unreasonable and unsafe speed in respect to the character of the place where the accident occurred; that the motor-man in charge of the car, after he saw, or should have seen, the wagon crossing the track in front of the car,

negligently failed to stop, or to attempt to stop, the car, there being ample time and space in which to do so, and thus prevent the collision.

The answer contains a general denial of the complaint, and affirmatively pleads contributory negligence by the plaintiff as the proximate cause of the injury complained of, in that he failed to look or listen for a car, or exercise any precautions for his own safety as he approached the track, and that, although the car was in plain view, and the plaintiff reasonably should have seen it in time to notify one Harrigan, the driver, of the approach of the car, and could thereby have avoided the accident, he nevertheless permitted Harrigan to drive the team at a high rate of speed upon the track immediately in front of the car.

The new matter of the answer was put at issue by the reply.  At the conclusion of plaintiff's case there was a motion by the defendant for a judgment of nonsuit, which was denied, and the cause was submitted to the jury, which rendered a verdict for plaintiff.  From the judgment entered thereon, defendant has appealed.

                                        Affirmed.

For appellant there was a brief over the names of *Messrs. Wilbur & Spencer,* with an oral argument by *Mr. Schuyler C. Spencer.*

For respondent there was a brief over the names of *Messrs. Gammans & Malarkey* and *Mr. Ephraim B. Seabrook,* with an oral argument by *Mr. Dan J. Malarkey.*

Mr. Justice Slater delivered the opinion of the court.

1. Numerous assignments of error have been set forth in appellant's printed abstract of the record, but in its brief, counsel have referred to but three or four of them. Hence we shall consider as abandoned and waived all assignments of error upon which no argument has been presented in the brief.

2. The first matter upon which error is predicated is the denial of the motion for a nonsuit, which was urged upon two grounds : (1) That no negligence of the defendant was shown; and (2) that it was shown that plaintiff was guilty of contributory negligence, which was the proximate cause of the injury.

Plaintiff's evidence tends to show that defendant is the owner of, and operates, an electric street railway system in the City of Portland, under a franchise forbidding the propulsion of the cars at a greater speed than twelve miles an hour; that, under this franchise, plaintiff operates such cars upon a double track along Burnside street, which extends easterly and westerly. Of these, the north track is used by cars going west, and the south track by cars going east. Seventh street extends north and south, intersecting Burnside street at right angles, and is paved with rough stone, or Belgian blocks; while Burnside street, to the intersection with Seventh street, is covered with a smooth-surface pavement. About 3 o'clock in the afternoon of February 7, 1908, plaintiff, by the invitation of Harrigan, was riding upon the seat of the ice wagon. Harrigan was driving south, along the west side of Seventh street, about four feet from the curb, and, when the team approached the intersection of that street with Burnside street, it was traveling at about the rate of six miles an hour. The wagon contained no load, was heavy, and made considerable noise on the rough pavement. It was covered, the cover extending as a canopy over the seat, but not extending down the sides opposite the seat, so as to obstruct the view of the driver. As the heads of the horses came about even with the curb of the sidewalk, on the north side of Burnside street, both plaintiff and Harrigan looked easterly down Burnside street, and saw, about the middle of the block, between Sixth and Seventh streets, the defendant's car, apparently coming west on the north track; but the evi-

dence indicates that they did not notice it was coming at an unusual speed, as they were looking in an almost direct line with the approach of the car. Burnside street and Seventh street, north of the intersection thereof at this point, are 70 feet in width, of which space 12·feet on each side is occupied with the sidewalk, leaving 46 feet of street for the use of vehicles. But south of the intersection Seventh street widens, the west line thereof receding 26 feet, leaving the southwest corner of the street intersection that much further west than the northwest corner. Harrigan, believing that he had ample time to safely cross the track before the car reached the crossing, did not check the speed of the team, but allowed it to continue in a direct line across the track at a speed as before stated of about six miles an hour. As the rear wheel of the wagon reached the middle of the north track, the defendant's car struck the left rear wheel of the wagon, evidently with a very considerable force, lifting it somewhat into the air, and, throwing the back part thereof around, moved it about 30 feet westerly and 16 feet southerly, so that the opposite rear wheel, after the accident, was resting upon the curb at the southwest corner of the street intersection, at which time the horses and wagon then occupied an easterly and westerly position, whereas, before the accident, they were in a northerly and southerly position. Plaintiff was thrown violently from the seat of the wagon to the pavement, striking upon his head and face, receiving severe laceration of the scalp and face and a concussion of the brain, which rendered him unconscious for many hours.

A number of witnesses, most of whom, because of previous experience as brakemen or motormen upon railway cars, appeared to be well qualified to judge of the speed at which the car was traveling, testified that, as the car approached the crossing and the place of collision, it was traveling in excess of 12 miles an hour, their opinions,

of course, differing and varying from something above that rate to as much as 17 miles an hour, and that there was no perceptible checking of the speed of the car prior to the accident. One of such witnesses testified that he was observing the motorman just previous to the collision, and perceived no checking of the car's speed, nor did he see the motorman reverse the current, although he said that might have been done without his being able to observe it, nor did the motorman apply the brakes. The evidence also tends to show that the car in question is approximately 30 feet in length, and contained at that time about six passengers; that it was provided with a ratchet or hand power brake, and an electric controller for reversing the current, as well as a device for sanding the rails; that with such equipment, used with reasonable proficiency upon a dry day, the car, when going at 15 miles an hour, should be brought to a stop within 30 to 35 feet; that in usual service it is considered an easy matter by motormen to stop a car upon an ordinary street within 40 or 50 feet with the ratchet brake alone; that, when a stop is to be made at a further crossing of a street intersection, the front of the car is allowed to proceed across the first crossing before the brake is applied to bring the rear of the car to a stop at the next crossing, and such is considered to be easy of accomplishment. The place of the accident in question has little or no grade; if any, a slight up-grade in the direction the car was moving. The day was perfectly dry, there having been no rain. Now, the plaintiff's case shows that when the car had come to a stop, after the collision had taken place, the rear of the car was about even with the property line on the west side of Seventh street, north of the track. This would place the head of the car not less than 50 to 55 feet from the point of contact. One witness, however, says that the car moved about 40 feet after colliding with the wagon. The plain inferences deducible there-

from are, not only that the car was moving at an unusually high rate of speed, but also that, whatever might have been the rate of speed of the car within the range of the estimate of the various witnesses, the brakes were not applied by the motorman until almost at the instant of the collision, which in our opinion of itself establishes a *prima facie* case of negligence in the operation of the car sufficient to take the case to the jury. As corroborative of this fact the evidence shows by the testimony of the conductor of the car that the motorman was a new man upon that route, that being his first day of service. He was what is termed an "extra man," and his experience in the management of electric street cars was evidently very limited.

3. The purpose of the ordinance limiting the speed of a street car is for the protection of the public, which has a right to act on the assumption that its requirements will be observed, and therefore the moving of the car at a greater speed than that permitted by the law is evidence of negligence sufficient to be submitted to a jury. *Beck* v. *Vancouver Ry. Co.*, 25 Or. 32 (34 Pac. 753).

4. But it must appear that, although the defendant was negligent, the injury was caused by the unlawful speed, without the contributory negligence of the person complaining, which was the proximate cause of the injury. *Kunz* v. *O. R. & N. Co.*, 51 Or. 191 (93 Pac. 141: 94 Pac. 504).

It is upon this latter phase of the question that defendant has chiefly relied to sustain its motion for a nonsuit, and it is urged that although the evidence shows that both plaintiff and Harrigan looked, as they approached the crossing, and saw the car coming, yet it was but a passing or fleeting glance, and made at such a distance from the track that plaintiff was not justified in relying upon any impressions received at that time as to the distance of the car, or the speed at which it was coming,

Sig.   3

but that the duty was upon him to continue to look until he was safely across. Most of the cases cited in support of this contention are from the State of Pennsylvania, where it has been held that the duty to look is not performed by looking when first entering on the street intersection, but that such duty continues until the track is reached, and that the party must look the instant before he enters upon the track (*Burke* v. *Union Traction Co.,* 198 Pa. 497: 48 Atl. 470; *Pieper* v. *Union Traction Co.,* 202 Pa. 100: 51 Atl. 739; *Ehrisman* v. *East Harrisburg City Pass. Ry. Co.,* 150 Pa. 180: 24 Atl. 596: 17 L. R. A. 448) ; and, in default thereof, it is declared that the party so conducting himself is guilty of negligence *per se.* But this extreme view of the law does not seem to have been favorably accepted by the courts of other states. Several cases are brought to our attention from other states, applying practically the same doctrine to pedestrians walking leisurely across a street and onto a track without observing, after having left the curb of the sidewalk, whether any car was approaching, and being struck by the car the instant entrance was made upon the track. These cases present in our view a somewhat different state of facts from those presented in this case. See *Metz* v. *St. Paul City Ry. Co.,* 88 Minn. 48 (92 N. W. 502) ; *Lofsten* v. *Brooklyn Heights R. R. Co.,* 184 N. Y. 148 (76 N. E. 1035) ; *Boring* v. *Union Traction Co.,* 211 Pa. 594 (61 Atl. 77) ; *Fitzgerald* v. *N. Y. City Ry. Co.* 92 N. Y. Supp. 733; *Lynch* v. *Third Avenue R. Co.,* 88 App. Div. 604 (85 N. Y. Supp. 180). In this State the rule has been established that it is presumptively negligent on the part of a pedestrian to attempt to cross a railway track without looking or listening, when, if he had looked and listened, he would have discovered the approach of the car in ample time to avoid injury. *Smith* v. *City Ry. Co.,* 29 Or. 539 (46 Pac. 136, 780) ; *Wolf* v. *City Ry. Co.,* 45 Or. 447 (72 Pac. 329: 78 Pac.

668).   But it has also been held by this court that, although it is negligence for the traveler not to look and listen for approaching trains before attempting to cross a railway track, the law does not undertake to determine whether he shall do so at any particular place or given distance from the crossing.   It is only required that he shall look and listen at the time and place necessary in the exercise of ordinary care; and this is generally a question for the jury, under all the circumstances of the particular case. *Hecker* v. *O. R. & N. Co.,* 40 Or. 6 (66 Pac. 270).

6.  While it has been said the rule applicable to travelers upon highways approaching steam railroad crossings does not apply with the same force to street railways, because the streets are equally open to pedestrians as well as to street railway companies, yet we think the rule above stated should apply to questions of this character; for, as said by Mr. Justice BEAN in the case last quoted, "the evidence shows that he (plaintiff) was looking and listening for approaching trains.   Whether he did so at the proper time and place, and whether, in order to do so effectively, he should have stopped, were all questions for the jury, and properly submitted to them." Especially would such be the case where, as here, the evidence shows that the plaintiff did see the car, and, apparently at least, acted in good faith, upon a state of facts appearing sufficient to induce a reasonable man to believe that he might cross in safety.

7.  Street railway cars and the general public have an equal right to the reasonable use of the public highways, but there is a resulting mutual and reciprocal obligation resting upon each to exercise such right with reasonable care so as not to inflict injury upon another in such places.

8.  Also the law imposes upon the operators of such cars the duty of having the car under control at crossings, so as to seasonably and efficiently yield to the driver

of a vehicle the right to the use of a crossing. acquired by him by reaching the crossing before the car was in such proximity thereto that it could not be stopped in time to allow him to pass in safety. Neither one, however, can unreasonably delay the other in the exercise of the right to cross; nor do we think that a street car company may, by causing its cars to travel at an unusual and unlawful rate of speed at such crossings, so magnify its limited right to the reasonable use of the street as to make of it a preferred right of way, and likewise subordinate the concurrent and equal right of an ordinary traveler. Nor, on the other hand, can the driver of a vehicle be permitted to escape responsibility for injuries resulting from his own equivocal acts, careless driving, or lack of diligence in exercising a right which he assumes to claim. In this case, however, the team was traveling at a rapid, unvarying but not unlawful speed, and the driver, therefore, was exercising with reasonable diligence the right claimed by him to the use of the crossing in advance of the car, and, by his acts, he manifested to the motorman his intention to claim such prior right when he proceeded to cross without checking or stopping his horses.

"A driver of an ordinary vehicle can proceed at a highway crossing to go over a street railway in the face of an approaching car when, and only when, he has reasonable ground for believing that he can pass in safety, if both he and those in charge of the car act with reasonable regard to the rights of others. The duty to slow up or stop, if necessary to prevent a collision, rests equally on each party. Under ordinary circumstances, the first to reach the crossing, if each has been moving at a reasonable rate of speed, has the right to proceed over it before the other; but, if it be apparent to the driver that the motorman does not intend to respect this right, he must stop and give way, if a collision can thus be avoided." Baldwin, Railroad Law, p. 418.

People using the highways of a city at crossings where there is a great amount of traffic, as appears to be the

condition at this locality, have many things besides a moving car upon a track to observe and take into account in order to avoid receiving injuries from other sources, or inflicting injuries upon others; and hence we think it would be unreasonable to say as a matter of law that the pedestrian should look continuously up and down a track, or at a particular car, until he is upon or across the track. We think the better rule is that if the driver of a vehicle when he arrives at a street intersection sees an approaching car, and is reasonably justified in believing there will be sufficient time for him to cross the track before the car, if run at its usual and ordinary rate of speed, will reach the point of crossing, and he proceeds with reasonable diligence, then he cannot be said, as a matter of law, to be guilty of negligence in attempting to cross, and the question is one of fact for the jury, to be determined from all the evidence before it. *Omaha St. Ry. Co.* v. *Mathiesen,* 73 Neb. 820 (103 N. W. 666).

9. Now, recurring to the facts as developed by plaintiff's case, we find that, when the team arrived at the curb on the north side of Burnside street, the rear of the wagon was about 35 feet distant from the center of the north track, and the team was traveling at the rate of about six miles an hour. If the front of the car at the same time had been 70 feet distant, and it was traveling at 12 miles an hour, the collision that occurred might have been reasonably anticipated, providing one assumed, or had the right to assume, that the motorman would continue to speed his car across the intersection at that rate, without putting it under conrol. But, when the motorman approached the first crossing at the intersection of Burnside street and Seventh street, it was his duty to have his car under control, so as to avoid any possible collision, and that obligation must be considered just as binding upon him as any duty that the law imposes upon the plaintiff to stop or look. The people using the highways for lawful purposes have the right

to rely in some measure upon the proper discharge of that duty. *Smith* v. *Street Ry. Co.,* 95 Minn. 254 (104 N. W. 16). But the facts appear to be that at the time the team entered or was at the intersection of the streets the car was distant from the point of contact about 140 feet, and neither plaintiff nor Harrigan observed that it was moving at an unusual or unlawful rate of speed. From these facts we cannot say, therefore, as a matter of law, that the car was so close that reasonable men would say that plaintiff and Harrigan, when proceeding on their way and attempting to cross the track, were not acting as reasonably prudent men should act under the circumstances, and the question was rightfully submitted to the jury.

10. Error is also claimed on the refusal of the court to give the following instruction:

"It is not enough for a driver to look and listen for a car when he is some distance from the track without making any further effort to look or listen for a car, and, if a driver simply looks for a car when he is at a considerable distance from the track and then drives onto the same without taking any further precaution, he is not in the exercise of ordinary care."

What we have already said with reference to the law of contributory negligence disposes of this question against the defendant's contention. But, even if the law were otherwise than has been stated as to the duty to continue to look, we are of the opinion that the facts assumed as to the basis of the requested instruction are too uncertain and indefinite upon which to base a definition of ordinary care. What the terms "some distance" and "considerable distance" mean to one man might be entirely different to another, and would also mean different things under different circumstances. Moreover, this instruction confines the definition of what constitutes ordinary care to the determination of a single fact; whereas, it is the result of all surrounding circumstances.

11. Whether plaintiff was negligent in not again looking must depend upon the attendant relative circumstances, part of which are found in the necessity of his position.  As we have said, the driver of the vehicle has other duties besides continually watching for street cars. He must keep a lookout to avoid being struck by other vehicles of other qualities and kind, and before all he must be vigilant to avoid colliding with and inflicting injuries upon others.  And, although the driver may have driven upon the track without looking a second time, yet if, when the motorman of the approaching car saw, or should have seen, a wagon going upon the track ahead of the car, and had sufficient time and space in which to stop the car and prevent the collision, and he failed to do so, his negligence is the sole proximate cause of the injury, and the driver's act, charged to be negligent, is not contributory thereto.  Thompson, Contributory Negligence, §§ 240, 1451.

12. Error is also predicated upon the refusal of the court to give the following instruction:

"Before you are warranted in allowing the plaintiff any damages for any alleged permanent injury or disability, you must be reasonably certain from a preponderance of the evidence that such permanent injury has been sustained and will continue and not merely that permanent injury is probable or possible."

It is argued that the evidence concerning the alleged permanency of the injury received by the plaintiff is extremely unsatisfactory in counsel's view, and that defendant was entitled to a clear and well-defined instruction covering the degree of evidence necessary to establish the fact of permanent injury.  Conceding this to be the fact, and, as also contended by the defendant, that a party to an action is entitled to have the jury instructed with reference to his theory of the case, when such theory is presented and supported by competent evidence (*Farmers' Nat. Bank* v. *Woodell,* 38 Or. 294: 61 Pac. 837: 65

Pac. 520), yet it is admitted in the brief that the matter included in the requested instruction was covered in the general charge, and we find upon examination thereof that the effect of the language used is fully as comprehensive and strong as that contained in the requested instruction, and to have given the latter would substantially be a repetition of the former. The refusal to give one other instruction is also noted in the brief, and urged as an error. The instruction is too lengthy to be set forth here. It is sufficient to say that we have carefully examined the matter and the authorities cited by counsel in support of the contention, and we find that the principles of law contained in the requested instruction, and applicable to the case, were given in the general charge. The only matter not included in the general charge embraces some reasons upon which the law as given is supposed to be based, and not the substance of the law, and there was no error in the court refusing thus unreasonably to extend its instructions.

From these conclusions, we adjudge that the judgment shall be affirmed.                    AFFIRMED.