## Spahr *v.* York Railways Company, Appellant.

*Negligence—Street railways—Interurban railway—Grade crossings— "Stop, look and listen."*

1. The courts will not declare that an interurban street railway operated with unusually large cars intended to be propelled at a high rate of speed has superior rights over the traveling public even at a grade crossing, so that travelers approaching the crossing must be held subject to the same rule as to stopping, looking and listening that applies to travelers approaching the crossing of a steam railroad.

2. The rule to stop, look and listen, applicable to the cars of steam roads, applies only in part to the crossings of street railways. There is always the duty to look for an approaching car, and if the street is obstructed to listen, and in some situations to come to a full stop. If a traveler looks and sees an approaching car so near as to make the attempt dangerous, it is his duty to stop; or if when he looks at the edge of the tracks his view is so obstructed that he cannot see it, it becomes his duty to listen, and under some circumstances it may be his duty to stop, if, when he looks and listens he still is in doubt as to the location and movement of the car. If in any of these situations he fails in the performance of the duty required by many decisions, he is guilty of contributory negligence and cannot recover.

3. What the driver of a team is required to do after looking depends upon what he sees when he looks, he can take no chance except at his own peril. If, however, when he sees a car so far distant that in the exercise of ordinary prudent judgment he is justified in concluding that he can safely make the crossing, and attempts to do so, it is for the jury to determine whether under the circumstances he should have stopped before attempting to drive over the tracks.

4. It is the province of the court to instruct the jury that the omission to exercise such care is negligence, and the province of the jury to determine whether the conduct of the party, established by the weight of the testimony, involved the omission of such care.

Argued March 12, 1912.   Appeal, No. 16, March T., 1912, by defendant, from judgment of C. P. York Co., Oct. T., 1909, No. 20, on verdict for plaintiff in case of John W. Spahr v. York Railways Company.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY and HEAD, JJ.   Affirmed.

Trespass to recover damages to a horse and wagon. Before BITTENGER, P. J.

The facts relating to the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $500.   Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*Richard E. Cochran,* with him *George S. Schmidt, John A.* *Hoober* and *Smyser Williams,* for appellant.—This is an interurban road eighteen miles long, between the towns of York and Hanover. The cars are fifty-two feet long and weigh forty-one tons and are propelled at high speed. Therefore the law as to street railways in cities does not apply to this case: Cable v. Spokane & Inland Ry. Co., 50 Wash. 619 (97 Pac. Repr. 744); Brooks v. Muncie & Portland Traction Co., 95 N. E. Repr. 1006; Reading & Columbia R. R. Co. v. Ritchie, 102 Pa. 425; Schwarz v. D., L. & W. R. R. Co., 218 Pa. 187.

The cars had a right of way on its own tracks superior to those of any other traveler or vehicle, and notice was given of its approach by blowing the whistle at the whistle post.

*James G. Glessner,* with him *K. W. Altland,* for appellee.—The car was stopped 260 feet beyond point of collision. This in itself was some evidence of defendant's negligence: Raulston v. Traction Co., 13 Pa. Superior Ct. 412; Gress v. Railway Co., 14 Pa. Superior Ct. 87; Woelfel v. Federal Street & Pass. Valley Ry. Co., 183 Pa. 213.

Trains should run into a station at a reasonable rate: Muhlhause v. Monongahela Street Railway Co., 201 Pa. 237.

The Supreme Court has said many times that the rule set forth in Carroll v. R. R. Co., 12 W. N. C. 348, is in its nature only applicable in clear cases: Sefcik v. Penna. R. R. Co., 223 Pa. 348; Howard v. B. & O. R. R. Co., 219 Pa. 358.

The motorman of a trolley car must keep his car under control so that he can stop it where necessary, to avoid danger: Oster v. Traction Co., 195 Pa. 320; Thompson v. Traction Co., 193 Pa. 555.

Whether, under all the circumstances, the driver was negligent in attempting to cross or in the manner in which he attempted to cross, was for the jury: Callahan v. Trac-

tion Co., 184 Pa. 425; Raulston v. Traction Co., 13 Pa. Superior Ct. 412.

The motorman had as conspicuous a view of plaintiff's driver as the latter had of the car. The speed of the car was much better known by the motorman than to the person facing its front, and the speed was entirely subject to his will: Raulston v. Traction Co., 13 Pa. Superior Ct. 412; Woelfel v. Railway Co., 183 Pa. 213; Calhoun v. Penna. R. R. Co., 223 Pa. 298; Tressler v. Balto. & Ohio R. R. Co., 40 Pa. Superior Ct. 224.

OPINION BY ORLADY, J., July 18, 1912:

This action was brought to recover damages sustained in a collision between a team the plaintiff was driving and a trolley car of the defendant. The accident occurred in clear daylight at a grade crossing. The road occupied by the plaintiff was an old-established public highway. The trolley line of the company was an interurban road built on its own private right of way. The cars are fifty-two feet long, weigh forty-one tons and are intended to be propelled at a high rate of speed. The comprehensive map presented with the record shows this crossing to be at a village station, representing twenty-four houses and a factory within a radius of 400 feet, surrounded by a populous community. After striking the team, killing the horses, separating them from the wagon, the car proceeded about 260 feet. It was not the intention of the motorman to stop at this station for the reason that no passengers were to be discharged, and none were in sight at the station.

There is the usual conflict in the testimony as to whether the driver of the team stopped at the proper place, but he testified that he did make the stop and did not see the car, which, a number of witnesses testified, was running at an unusually high rate of speed. The force applied at the collision would confirm this fact, and the testimony of the motorman clearly indicates that he saw the plaintiff as he was approaching the crossing; and that the

driver was not slowing up. His testimony clearly shows that he was from 250 feet to 300 feet away at a time when he saw that the driver was about entering upon the crossing, and as the horses did not slow up he gave the danger signals, but either did not have his car under such control, or did not attempt it, or the appliances refused to respond so as to stop the car within that distance.

The appellant urges that we should declare as a matter of law that because this is an interurban railroad, operated by weighty appliances, that it had superior rights even at a grade crossing over the traveling public, so that travelers approaching the crossing of such a road must be held subject to the same rule that applies to travelers approaching the crossing of a steam railroad, one of which is, that the traveler must stop, look and listen before entering upon the track. The traveler and the car had a right to use the crossing and each owed a correlative duty to the other; the car to give timely warning under guarded speed, and the traveler to approach it with proper caution. The situation was such as to call for unusual vigilance on the part of the motorman; as his car was of unusual size and weight and on account of not making a stop at that station, he was approaching it under a higher rate of speed than had he intended to stop. The motorman had as conspicuous a view of the plaintiff as the latter had of the car. The speed of the car was better known to the motorman than to a person facing its front, and its speed was entirely subject to his will. After seeing the plaintiff, the distance to be traveled, the character of the crossing, and the control of the car, were matters of which the motorman was bound to take notice and exercise care in proportion to the conditions facing him. The chance which the plaintiff took was that of crossing a street in safety in advance of a car which approached at the usual rate of speed. It was not the chance of being run down by a car propelled at an unusually high rate of speed, lacking proper control. A person about to cross a street at a regular crossing is not bound to

wait because a car is in sight, if it is at such a distance
from him that he has ample time to cross.   If it is run
at the usual rate of speed under proper control, it cannot
be said as a matter of law that he is negligent in going
on.   The rule to stop, look and listen, applicable to the
cars of steam roads, applies only in part to the crossings
of street railways.   There is always the duty to look for
an approaching car, and if the street is obstructed, to
listen, and in some situations to come to a full stop.   If he
looks and sees an approaching car so near as to make
the attempt dangerous, it is his duty to stop; or if when
he looks at the edge of the tracks his view is so obstructed
that he cannot see in, it becomes his duty to listen, and
under some circumstances it may be his duty to stop, if,
when he looks and listens he still is in doubt as to the loca-
tion and movement of the car.   If in any of these situa-
tions he fails in the performance of the duty required by
many decisions, he is guilty of contributory negligence and
cannot recover.

What the driver of a team is required to do after looking
depends upon what he sees when he looks; he can take
no chance except at his own peril.   If, however, when
he sees a car so far distant that in the exercise of ordinary
prudent judgment he is justified in concluding that he
can safely make the crossing, and attempts to do so, it is
for the jury to determine whether under the circumstances
he should have stopped before attempting to drive over
the tracks: Callahan v. Traction Co., 184 Pa. 425; Huston
Bros. v. Traction Co., 28 Pa. Superior Ct. 374; Tozer
v. Ry. Co., 45 Pa. Superior Ct. 417; Raulston v. Traction
Co., 13 Pa. Superior Ct. 412; Smathers v. Ry. Co., 226 Pa.
212.

It is the province of the court to instruct the jury that
the omission to exercise such care is negligence, and the
province of the jury to determine whether the conduct
of the party, established by the weight of the testimony,
involved the omission of such care: Sieb v. Traction Co.,
47 Pa. Super. Ct 228.  What should have been visible to the

plaintiff was equally so to the motorman, and whatever the character of the road, as to its power and the ownership of its bed, it does not lose its character of street railway. The location was in a thickly settled suburban village where the public highway was likely to be occupied at any moment. There was no fixed duty on this plaintiff to stop unless the necessity for that additional precaution was obvious, and the question whether under the circumstances it should have been taken, was a fact to be disposed of by the jury, and not a question of law for the court: Talley v. Traction Co., 227 Pa. 393.

The extension of trolley lines and the advanced system of interurban lines so called, have developed the suburban village, where the use of street and grade crossings present hazards that are equally obvious and important as in the more congested centers, like cities.

The disputed facts were of such character that the case was properly referred to the jury, and it was fairly submitted—to determine the speed of the car, the view of the crossing by the motorman and driver respectively, and the conduct of the driver in occupying the crossing.

The assignments of error are overruled and the judgment is affirmed.