## Lehigh & Wilkesbarre Coal Company, Plff. in Err., *v.* Levi Lear.

A person about to cross a railroad track must not only stop, look, and listen, but stop at a proper place for the purpose; and the question whether he did so or not is for the jury.

Where there are five tracks at one crossing, and the view of the fifth is obstructed until the first four have been crossed, and there is no gate or flagman, it is for the jury to say whether a traveler who is injured on the fifth fulfilled ihs duty by stopping, looking, and listening before driving upon the first track or whether he should have taken other precautions.

It is also a question of fact for the jury whether at a given crossing a railroad company is guilty of negligence in making a "flying switch" at the speed of 20 miles an hour.

The long delay of a plaintiff in bringing suit may be taken into consideration by the jury in determining whether the injury complained of resulted from the cause alleged.

(Argued April 14, 1887. Decided April 25, 1887.)

January Term, 1887, No. 177, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Luzerne County to review a judgment on a verdict for the plaintiff for $2,200 damages in an action of trespass on the case for negligence. Affirmed.

The testimony for the plaintiff below was to the following effect:

On the 14th of December, 1875, in the afternoon, Levi Lear, the plaintiff below, was driving with a closed carriage, inside of which were seated two ladies and a man; outside on the seat with

Cited in Stanton v. Delaware & H. Canal Co. 1 Lack. Jur. 245.

NOTE.—For the province of the jury in such cases, see note to Pennsylvania & N. Y. Canal & R. Co. v. Huff, *ante*, 60.

For authorities as to the negligence of railroad companies in respect to flying switches or detached cars moving by their own momentum, see editorial note to Kentucky C. R. Co. v. Smith, 18 L. R. A. 63.

him was another man. They were returning from a funeral. It was almost dark when he reached the railroad crossing near the Empire store, on Northampton street, in the city of Wilkesbarre.

The railroad crossing at this point of the street consists of five tracks running nearly parallel, a short distance apart, and all within a space of 60 feet.

Lear came to a dead stop a few feet on the west side of the first track. He had a full view up and down all the tracks above and below the crossing except the fifth or east track, which he could not see below the crossing from where he stopped at the first track; nor could he see it at any point below the crossing in the direction he was driving, until he actually crossed the first four tracks and got upon the fifth or east track, because of an engine house 150 feet long, built close to the road he was driving, and within 9 feet of the fifth track, and a number of cars that had lumber piled upon them on the several tracks below this engine house, which completely shut off the view from where he stopped or at any other place along the street he was driving, until he passed over from where he stopped at the first track and got upon this fifth track.

When he stopped at the first track he looked up and down the first four tracks. He could plainly see these, above and below the crossing. He listened, and heard no noise from where he stopped, and saw or heard no indication or warning of the approach of cars or engine. He heard no bell rung or whistle blown. He looked for and saw no flagman where he was accustomed to and expected to see him in case of danger, the flagman having left, without notice, an hour previous. Lear proceeded cautiously from where he had stopped, looked, and listened, on across the first, second, third, and fourth tracks, and had barely got over the fifth or east track with the horses, when the under part of the carriage was suddenly run into by a long, low, flat-bottomed car, without any light on, that had been purposely detached from an engine far below the crossing, and speeded and shot backwards, at the rate of 20 miles an hour, over the public crossing—the engine remaining below—to make a "flying switch." The under portion of the carriage was knocked out and hurled with the plaintiff into a rocky creek, 20 feet above the crossing; the body of carriage, with its occupants, slid upon the flat car, and with the brake turned on, was carried

up a heavy grade, 100 yards, to the switch above, where the car was intended to be sent by the engineer when he gave it the momentum below the crossing.

At the time of the accident all of these railroad tracks were in active operation. Danger was to be apprehended in crossing any one of them; where cars and engines were run and moved about continuously, and cars were also run detached from engines by gravity. The immediate neighborhood is thickly populated.

The plaintiff was badly cut and bruised in the face and body, and his back and legs severely injured. For a year after the accident he was unable to perform any labor and was permanently disfigured and disabled.

As soon as he was able to get about he placed his complaint in the hands of his counsel. Within a short time after, the company became insolvent, and passed into the control of receivers, where it remained until 1882. In September, 1881, this suit was instituted against the receivers, Charles Parrish, and the company. In 1882 the receivers were discharged and the corporation regained legal life. In 1884 the court below, inadvertently, struck the corporation name with the receivers from the record. Afterward the company was reinstated as the real party.

On the part of the company testimony was produced to show that the whistle was blown, the bell rung, that Lear was warned not to cross, that he drove on the crossing at a trot, saw the train when the horses got on the last track, and then whipped them up to cross quickly, and that he had been drinking; that for four years afterward he worked at the same work for the same wages as before, never complained, had no outward mark and employed no physician and that all the ills he ever complained of arose from a bite of a dog received two years later, for which he has a suit pending against the owner.

The court below charged the jury as follows:

This is an action on the case of Levi Lear against the Lehigh & Wilkesbarre Coal Company, in which the plaintiff seeks to recover damages from the defendant for personal injuries suffered by him in an accident which occurred in the neighborhood of this city some eleven years ago. There are various legal questions raised by the case, upon which it becomes the duty of the

court to instruct the jury. It is the province of the jury to ascertain from the evidence what is the truth of this case as to its facts; but it is the duty of the court to explain to the jury, as well as they can, the rules of law applicable to the truth when it shall have been found by them.

The first question to which your attention will be directed in this case is this: Was the plaintiff injured by this accident as he alleges? If you find from the evidence that he was not injured by this accident, then he would not be entitled to recover any damages in this suit.

In the second place, if the plaintiff was injured, the next inquiry would be: Were his injuries the result of negligence on the part of the defendant? Because we say to you, as matter of law, that if the defendant was not guilty of any negligence, then, although it be true that the plaintiff suffered injuries from this accident, he would still not be entitled to recover any damages.

What, then, in the legal sense, is negligence? It has been variously defined by writers on the subject, but the definition now accepted is that negligence is the absence of ordinary care, according to the circumstances. This negligence must be shown and established by the evidence in any given case. It may consist in the doing of something by the party charged with it which evinces want of ordinary care, or it may consist in having omitted to do something which an ordinarily careful person would have done under the same circumstances. Negligence, therefore, may consist either in the commission or in the omission of certain acts. Are you satisfied then, from the evidence in this case, that the defendant was chargeable with negligence, and that this caused or resulted in the accident and injury of which the plaintiff complains?

This brings us to the consideration of the subject of the duties of railroad companies in regard to the crossings of roads or highways at grade; and it may be said, as a general statement of the rule of law on this subject, that at such crossings, railroad companies are bound to use all such means as reason, experience, and ordinary prudence and care dictate to protect the traveling public from accident or injury in the usual and ordinary use and enjoyment of the highway. Out of this view of the duty of railroads comes the special duty of having signals, such as bells, whistles, watchmen, and of running at no greater speed than is reasonably prudent.

The means and precautions which a railroad company must adopt under this rule will differ, as the circumstances differ. There is no uniform and universal law, applicable alike to all cases. If the crossing, for instance, is in the open country, exposed to public view in all directions for a considerable distance, the same precautions on the part of the railroad company might not be required as would be if the crossing were, from the nature of things and the surroundings, more dangerous. In this connection I will read to you briefly from one or two cases which are recent decisions on the questions now under consideration:

In the case of Lehigh Valley R. Co. v. Brandtmaier, 113 Pa. 610, 6 Atl. 238, which originated in this county, the decision of the supreme court was filed on the 4th of this present month; from it I read an extract as part of my charge in this case:

"It is the duty of a railroad company in the running of its trains to exercise care according to the circumstances, and where the railroad track crosses a much traveled street or highway, the company as well as the public, is bound to exercise a degree of care reasonably commensurate with the danger. It is the duty of the company on the one hand to give some sufficient notice of the train's approach and to moderate the speed of the train to such rate as, under the circumstances, is reasonably consistent with the public safety; on the other hand, it is the imperative duty of the traveler to stop, look, and listen for approaching trains before attempting to pass over; if he neglects this legal duty, or knowingly attempts to cross in front of a rapidly moving train, he takes his life in his own hands, and assumes the risk of personal injury.

"The law does not designate the mode in which these precautions against injury on the part of the company are to be exercised; there is, it may be conceded, no common-law duty on the part of the company to station flagmen or to maintain gates at public grade crossings, unless, indeed, under the particular circumstances, the public safety cannot otherwise be reasonably secured; but the fact that flagmen are not stationed at such a crossing, and that gates are not there maintained, are matters proper to be considered with other facts in a given case in determining the rate of speed which is reasonably consistent with the public safety."

On the same general subject or branch of the case I may call your attention to the language of the supreme court in the case

of Philadelphia & .R. R. Co. v. Killips, 8 W. N. C. 529. The court says:

"It is not claimed that irrespective of circumstances it is a common-law duty of. a railroad company to station flagmen or maintain gates at public grade crossings. A road may be so constructed, however, by making short corners or deep cuts at a public thoroughfare,. as to make it more than ordinarily danger-ous, and it may thus become the duty of the company to employ flagmen or adopt other adequate means of warning and protec-tion. Where there is extensive travel on a street or other high-way crossing a railroad track, the company as well as the pub-lic is bound to exercise a degree of care and diligence commen-surate with the risk of accident. It is the duty of the com-pany, on the one hand, to give timely and sufficient notice of the approach of trains at such crossings, while on the other it is the imperative duty of the traveler to stop, look, and listen for ap-proaching trains before attempting to pass a railroad crossing. While the law does not point out any particular mode or manner in which notice of approaching trains shall be given, it does re-quire that some suitable and adequate means adapted to the cir-cumstances shall be adopted and applied."

Now, these are the general rules of the law briefly stated ap-plicable to railroad companies as to their duties at crossings. We say to you, in the next place, as matter of law, that if, in your opinion, the defendant, under the evidence, was guilty of negligence, it still becomes your duty to find from the evidence whether the conduct of the plaintiff himself was free from neg-ligence. Did the plaintiff conduct himself in all respects as an ordinarily careful and prudent man? Or did he exhibit a want of prudence and ordinary care which concurred with the negli-gence of the defendant in causing the accident and injury of which he complains? Because we say to you that the rule of law is that where the accident and injury is the result of the concurrent negligence both of the plaintiff and the defendant, the law will not stop to ascertain who has been the more to blame, but refuses to allow a plaintiff to recover. If, therefore, you should find from the evidence in this case that the defendant was guilty of negligence, and should also believe from the evi-dence that the plaintiff himself was also negligent, and that his negligence concurred with that of the defendant in causing the

accident and producing the injury, then he has no right to re-
cover a verdict at your hands for damages.

Having called your attention to the duties of railroad com-
panies at crossings, we come next to the duty of the public trav-
eling upon the roads crossed by railroads.    It is the duty of par-
ties traveling upon roads crossed by a railroad to approach such
a crossing with watchfulness and care, to stop, look, and listen,
and to stop at such a point as will afford a view of the crossing
and enable them to see and hear.

Railroads are fastened to the earth; the trains which run upon
them cannot turn to the one side or the other to avoid obstacles.
It is the duty of parties, therefore, to approach crossings that
railroads use and have the right to use, with care, circumspec-
tion, and prudence, and to stop, look, and listen.    Therefore, an
important question in this case, under the evidence, is this: Did
this plaintiff stop, look, and listen before attempting to cross this
railroad?    Did he stop at such a point as commanded a view of
the crossing?    You have heard the evidence on that subject, and
that raises one of the important questions of fact for you to pass
upon under the instructions already given.    The peculiarity of
this case, which distinguishes it in some measure from any other
with which I am familiar, is that here there were five railroad
tracks within a space of 60 or 80 feet, belonging to the same
company; and we say to you that under such circumstances the
rule that a party attempting to cross must stop, look, and listen
is to have a rational and reasonable construction, as all rules are.

Now, the plaintiff testifies that he stopped at a point which
would enable him, as I understand the evidence, to see three or
four of these tracks, but not the fifth or last track.    He further
states that his view of this track was obstructed or shut off by an
engine house and by piles of lumber belonging to the company.
Under such circumstances it will be for you to ascertain whether
the plaintiff did stop or not.    The evidence on this subject is
contradictory.    The witnesses for the defendant deny that he
stopped or that they saw him stop, although they were looking
at him.    That is a question of fact for you to pass upon.    If he
did stop, was it at a point which commanded a view of this cross-
ing as well as any other point could, at which it was advisable
to stop?    Did he look and listen?    Was he warned by a party or
by parties upon the road not to go on, and if he was, did he go
on, without heeding the warning?    Or, knowing this ground

well and being familiar with the location, did he drive rapidly over this crossing, regardless of danger, taking all the chances? If, under the evidence, you believe that any of these propositions in regard to his action are true, then he ought not to recover.

The defendant requested the court to charge, *inter alia:*

1. That from the plaintiff's testimony it appears that he stopped to look and listen at a point where the view was entirely obstructed, some 50 or 60 feet from the crossing of the main track, where the collision occurred, and from that point drove, without stopping, upon the railroad track and on the way he crossed a space of from 10 to 15 feet in width where the view of the track was unobstructed, and that it was his duty to stop, look, and listen at the point where he could see, *viz.,* after passing the pay car building and before driving on the track; and having failed in this duty, he was guilty of contributory negligence, and cannot recover in this action.

*Ans.* In connection with that point we say this: That we do not believe the rule of law to be that where there are five tracks at one crossing, it is the duty of a traveler, within the space of 60 or 80 feet, to stop at each track before crossing; that the duty of stopping and looking and listening may have been performed if he has stopped at the first track. Whether it was performed or not, under the instructions in regard to negligence which we have already given you, will be a question of fact for the jury, in our judgment, and we decline to affirm this point. It is negatived. First assignment of error.

2. If the jury believe from the evidence that the whistle was blown and the bell rung before approaching the crossing, then no negligence has been shown on the part of the defendant and the plaintiff cannot recover.

*Ans.* If the only question of negligence in this case on the part of the defendant consisted in the dispute about the ringing of the bell or the blowing of the whistle, we could affirm that point, possibly; but under all the circumstances we cannot affirm it in its length and breadth; and we therefore decline to affirm it. Second assignment of error.

4. That a speed of 20 miles an hour over a crossing in a country place is not negligence; and that under the evidence in this case no negligence has been shown on the part of the defendant in running at too great a rate of speed.

*Ans.* We say that is a question of fact for the jury, and is not a matter of law for the court; we decline to affirm it. Third assignment of error.

5. That, if according to the testimony of the plaintiff, he called no physician after the accident, and made no demand upon the defendant for damages until his suit was brought, until nearly six years after the accident, the jury will be authorized to find that the disabilities, which he now claims he suffers, are not the result of the collision in 1875.

*Ans.* Undoubtedly, the jury would have a right to consider the facts alluded to in this point. If the use of the word "authorized" is intended to mean that I am to give you binding instructions that you must find as stated in the point, I decline to affirm the point. But I say to you that the subject-matter referred to in the point should be carefully considered by the jury in ascertaining the truth of the case. Fourth assignment of error.

6. Under all the evidence in the case the plaintiff is not entitled to recover.

*Ans.* That point we decline to affirm. Fifth assignment of error.

Verdict for plaintiff for $2,200.

*A. H. McClintock* and *H. W. Palmer,* for plaintiff in error. —To stop where nothing can be seen does not fill the measure of a traveler's duty. If need be he must dismount, go on the track, and look. Pennsylvania R. Co. v. Beale, 73 Pa. 504, 13 Am. Rep. 753; Central R. Co. v. Feller, 84 Pa. 226.

There is in the fact that more than one track is to be crossed nothing to modify the rule.

In Pennsylvania R. Co. v. Garvey, 15 W. N. C. 498, the traveler stopped and looked before crossing at a point where his vision was unobstructed, could see no danger, and then proceeded to cross.

The danger at a "many-track crossing" is multiplied. In place of relaxing this rule so necessary for the safety of train loads of people it should be at least maintained, if not made more stringent.

An answer that is inadequate, misleading, and not responsive to the point submitted is ground for reversal. Stall v. Meek, 70 Pa. 181; Bisbing v. Third Nat. Bank, 93 Pa. 79, 39 Am. Rep. 726.

No rate of speed is negligence *per se.* Powell v. Missouri P. R. Co. 76 Mo. 80; Reading & C. R. Co. v. Ritchie, 102 Pa. 425.

Twenty-five miles per hour is not negligence. Reading & C. R. Co. v. Ritchie, 13 W. N. C. 197.

The sixth point was a request for a binding instruction for the defendant to which it was entitled:

1. Because all the evidence of train hands and bystanders showed that proper signals were given before the crossing was reached and no one disputed the fact. The negative testimony of the plaintiff and another that they did not hear was all that appeared against it. Of other negligence there was no proof.

2. Because the uncontradicted evidence was that Lear passed over an open space where the tracks were visible before reaching the place where he stopped, at which point he could see nothing.

3. That after stopping at a place where seeing was impossible he crossed another open space where an unobstructed view of the last track could be had for a mile.

4. Therefore, from his own testimony, the plaintiff had been guilty of negligence that contributed to the accident.

Where one track of a double-tracked line is obstructed at a crossing by either a stationary or a moving train, it is contributory negligence for a passenger to go upon the line without looking up and down the other line of rails. Stapley v. London, B. & S. Coast R. Co. L. R. 1 Exch. 21; Pence v. Chicago, R. I. & P. R. Co. 63 Iowa, 746, 19 N. W. 785.

In the case of Pennsylvania R. Co. v. Beale, 73 Pa. 504, 13 Am. Rep. 753, the traveler stopped in a cut, where nothing could be seen, a short distance from the railroad, and looked and listened. Hearing nothing, he drove forward, but just before reaching the track he crossed an open space 15 feet wide where the view was unobstructed without stopping, and was killed by a train. It was held that the evidence showed a clear case of contributory negligence in the deceased. The crossing at which he met with the injury which resulted in his death was a dangerous one, and as he was well acquainted with it, there was greater reason that he should exercise the utmost care and caution by stopping at the railroad before undertaking to pass over.

The court submitted a question of fact to the jury of which there was no evidence, *viz.,* whether Lear could see at the point where he stopped.

*John Lynch, John T. Lenahan,* and *E. A. Lynch,* for defendant in error.—The facts peculiar to this case are:

1. The acknowledged absence of Gruver, the flagman, during the regular business hours of the company's tracks, and the recognized necessity of his presence there, together with Lear's right to expect that he would be at the crossing as a precautionary measure to give the proper warning of danger.

2. The character and danger of the crossing by reason of the numerous tracks and obstructions to the view of the fifth or east track.

3. The known dangerous experiment of making a "flying switch," especially in such a place as this was, and with a flat car, only 4 feet high, at dark, with no light, whistle, bell, or watchman to give proper signals of its approach to the crossing.

A charge is not to be scrutinized in parts with the test of legal criticism. It must be taken as a whole. Ordinary understanding, a capacity to understand language in its common acceptation, must be attributed to a jury. Baldy v. Stratton, 11 Pa. 324.

Stopping between the tracks at such a place, under the circumstances, would be declared negligence, *per se.* Moore v. Philadelphia, W. & B. R. Co. 108 Pa. 350.

Whether it was less dangerous to move continuously across the tracks than to loiter between them was a question for the jury. Pennsylvania R. Co. v. Garvey, 108 Pa. 369; Weber v. New York C. & H. R. R. Co. 67 N. Y. 587; Lehigh Valley R. Co. v. Brandtmaier, 6 Atl. 238, 113 Pa. 610.

When the circumstances under which the person acts are complicated, and the general knowledge and experience of men do not at once condemn his conduct as careless, it is plainly to be submitted to the jury. Illinois C. R. Co. v. Ebert, 74 Ill. 399.

The company recognized the dangerous character of the crossing and the necessity for a flagman by stationing Gruver there long before the accident. His absence where Lear expected he would be, in case of danger, raised a very material question as to whether the plaintiff in the absence of negligence on his own part was not misled by this failure of the flagman's presence, invited to cross, and lured to danger. Philadelphia & R. R. Co. v. Killips, 8 W. N. C. 529; Pennsylvania R. Co. v. Coon, 111 Pa. 438, 3 Atl. 234.

It was a question for the jury whether the circumstances surrounding this crossing were not such as made it the duty of the company to have a flagman there. Philadelphia & T. R. Co. v. Hagan, 47 Pa. 244, 86 Am. Dec. 541; Philadelphia & R. R. Co. v. Spearen, 47 Pa. 300, 86 Am. Dec. 544.

The speed and manner of running over the crossing—making a "flying switch" at the rate of 20 miles an hour, with a flat car detached from the engine, raised another question of negligence for the jury. Beach, Contrib. Neg. § 72; Kay v. Pennsylvania R. Co. 65 Pa. 274, 3 Am. Rep. 628; Pennsylvania R. Co. v. Lewis, 79 Pa. 33.

Pence v. Chicago, R. I. & P. R. Co. 63 Iowa, 746, 19 N. W. 785, has no application to the case at bar, because in that case the party injured had an unobstructed view of 1,300 feet of the track, while he was at a distance of 50 feet from the railroad. Stubley v. London & N. W. R. Co. L. R. 1 Exch. 13, is in direct antagonism to Philadelphia & R. R. Co. v. Carr, 99 Pa. 505.

PER CURIAM:

This case was submitted to the jury in a correct charge. Under the evidence it would have been error to take it from them. There was evidence that the plaintiff below did stop to look and listen, before he crossed the track. Whether under all the evidence he stopped at a proper place was a question of fact for the jury. The great interval which elapsed between the time of the alleged injury and the bringing of the suit was properly called to the attention of the jury.

Judgment affirmed.