## FARRELL v. ERIE R. CO.

(Circuit Court of Appeals, Second Circuit. April 6, 1905.)

No. 158.

1. RAILROADS—INJURY OF PERSON AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Plaintiff, a boy 16 years old, approached on foot a crossing of double tracks of defendant's railroad over a street. After crossing the street the tracks curved sharply, and took a direction at right angles to their former course. Plaintiff's testimony showed that before going upon the crossing he looked in both directions along the track, which on the side of the curve he could see as far as a tunnel 1,300 feet away. There was no train in view from that direction, but one was approaching from the other on the further track, and he waited until it had passed, and then, looking along the other track and seeing no train, he started to cross, but was struck by a train coming from the opposite direction, and injured. There was thick smoke coming from the train which passed, and settling near the ground, and the train itself as it rounded the curve obstructed the view on the other track, except for perhaps 150 feet. There was also evidence that the train which struck plaintiff was moving at a speed of 15 miles an hour, in violation of a city ordinance, which

prohibited a speed greater than 6 miles. *Held*, that in view of such evidence, and the noise made by the train which had passed, the question of plaintiff's contributory negligence was one of fact for the jury.

2. SAME.

A person approaching a railroad crossing in a city is not bound to anticipate that an approaching train will proceed at an unlawful or an unusual rate of speed, and is not chargeable with negligence, as matter of law, in attempting to cross, if, in view of the distance at which the track seems to be clear, he would have time to cross before a train going at the usual and lawful speed would reach the crossing.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, § 1074.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Writ of error by the plaintiff in the court below to review a judgment entered upon a verdict directed by the court in an action brought to recover for injuries received at a highway crossing. The trial judge directed a verdict for the defendant upon the ground that the evidence established contributory negligence on the part of the plaintiff, and refused the request on behalf of the plaintiff to submit that issue to the jury. Error is assigned of that ruling.

J. B. Ker, for appellant.
Chas. MacVeagh, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The question whether the case was one which should have been submitted to the jury upon the issue of the contributory negligence of the plaintiff is the only one which has been argued at the bar.

The evidence upon the trial tended to show the following facts: Near the intersection of Monmouth street and Twelfth street, Jersey City, and a few feet westerly of the westerly line of Monmouth street, two parallel tracks of the defendant's railroad cross Twelfth street at right angles, and curve sharply to the westward, until they join the main lines of the defendant's road, when they run practically due west, and enter a tunnel distant about 1,300 feet from the crossing. Both Twelfth street and Monmouth street, as shown upon the map which was used upon the trial, are narrow streets, being about 30 feet wide. The plaintiff, a lad 16 years of age, was proceeding on foot, on the afternoon of a clear day, along the south side of Twelfth street, going west intending to cross the tracks. After he reached Monmouth street he looked to the left, and saw no train coming, though he could see the tracks unobstructed as far as the tunnel. Then he looked to the right, and saw a short freight train coming on the further track, which was going west towards the tunnel. He stopped and waited until it had passed and had got about 12 feet beyond the crossing. Then he looked again, saw the near track was clear to the westward as he thought for a distance of 100 feet, and started to cross; but as he got on the first track he was struck by a train coming from the westward. Thick smoke was coming from the locomotive of the train going towards the tunnel, and settling near the track; and the train itself while rounding the curve would preclude a person standing on Twelfth

street near the westerly line of Monmouth street from seeing a train coming from the westward on the nearer track more than 150 feet away. The evidence did not distinctly show how far the plaintiff was from the track when he finally looked to see if a train was approaching and started to cross. If he had reached the westerly line of Monmouth street, he would have been about 10 or 12 feet from the track. There was testimony that the train which struck the plaintiff was going at a speed of about 15 miles an hour.

Upon these facts we think the trial judge erred in taking the case from the jury. The testimony of the plaintiff indicates that he was a fairly intelligent lad, and if his narrative was true he approached the crossing without undue haste, and did not attempt to cross the tracks until he had looked, waited until one train had passed, looked again to see if he could cross safely, and discovering, as he supposed, that he could do so, went forward. It is not impossible that the smoke of the locomotive of the freight train obscured his view so that while the train was rounding the curve he could not have seen the approaching train more than 100 feet away. The noise of the freight train sufficiently explains his failure to hear the approach of the other train. If he was on the westerly line of Monmouth street when he made his final start to cross the track, he could have crossed, going leisurely, in about 5 seconds, and probably less. If the train that struck him had been moving at a speed of 6 miles an hour, it would have been about 11 seconds in covering the 100 feet. By one of the ordinances of the city it was unlawful for the defendant to propel its trains across any street within the city limits at a greater speed than 6 miles an hour. The engineer of the locomotive which struck the plaintiff testified that the customary speed of the defendant's trains at that place was at the rate of 5 or 6 miles an hour. If the train was in fact making a speed of 15 miles an hour, it would have traversed the 100 feet in about 4½ seconds.

The plaintiff was bound to use ordinary care, which was to be greater or less, according to the circumstances in which he was placed, and the dangers which a person of ordinary prudence would have reason to apprehend. He was not required to anticipate that an approaching train of the defendant would proceed at an unlawful rate of speed, or at an unusual rate of speed, or at a rate of speed dangerous in view of the relative location of the crossing and the curve. If, estimating the distance at which the track seemed to be clear, the time it would take a train to travel that distance proceeding at the usual speed, and the time it would require to cross the track in safety, a person of ordinary prudence would under the same circumstances have considered it safe to cross, the plaintiff was justified in attempting to do so. Unless the jury would not have been warranted in finding that ordinary care would forbid an agile lad to attempt to cross a railway track which he could pass in five seconds, when no train was in sight for a distance which a train proceeding at ordinary speed would cover in twice that time, the question of contributory negligence was not one of law, but one of fact. Irrespective of any arithmetical calculations

based upon time and distance, if it was true that the plaintiff just before he stepped upon the track looked to see if any train was approaching, and did not see one, or if he did see the approaching train, and in that respect testified untruly, but nevertheless supposed that it was far enough away to permit him to cross the track without incurring any substantial risk, the question whether his attempt was one which an ordinarily prudent person would not have made was a question upon which fair-minded men might reasonably differ. Some weight is to be given to the presumption that those who are crossing a track in front of an approaching train, guided by the instinct of self-preservation, will not place themselves in imminent peril of life and limb by making the attempt without allowing a proper margin of safety. Reasonably prudent pedestrians not infrequently cross tracks near which they are standing in front of slowly approaching trains, and sometimes when the train is seen not to be more than 150 feet, or even 100 feet, away; and unless it can be said that to do so is negligent per se, it is for a jury to consider the various circumstances which give character to the particular act and assign it to its proper category. When different inferences fairly may be drawn from the facts, and different minds may be led reasonably to different conclusions upon the evidence, it is error to take the question of negligence from the consideration of the jury.

The evidence upon the trial presented an improbable, but not an impossible, case. It seems improbable, if the boy had looked as he said he did, that he could have failed to see the approaching train when at a distance of 150 feet; yet if, owing to the smoke, he could not see it until it was within 100 feet, and he looked and did not see it, the accident may have happened substantially as he testifies it did. Although he may have been near enough to the track to cross with apparent safety, nevertheless if it be true, as some of the testimony indicated, that the train was moving at the speed of 15 miles an hour, it is not wholly incredible that it could have overtaken him before he passed over.

The judgment is reversed.