Argued February 2, affirmed July 10, 1923.

KIRBY v. SOUTHERN PACIFIC CO. ET AL.

(216 Pac. 735.)

**Railroads—Care on Part of Deceased Presumed.**

1. The presumption is that decedent driving on city street was in the exercise of due care as he approached the cross-street where he was struck by defendant's electric train.

**Railroads—Driver may Assume Observance of Speed Ordinance.**

2. An automobile driver approaching intersecting street on which was defendant's electric train might assume, in absence of notice, that defendant would not violate the speed ordinance.

**Railroads—Failure to Look and Listen Negligence.**

3. The failure of a person about to cross a railroad track to look and listen for an approaching train is negligence *per se*, and will bar a recovery for injury.

**Railroads—Negligence of Traveler in not Looking and Listening in Particular Place or Direction Question for Jury.**

4. The court cannot declare as a matter of law that a person about to cross a railway track must have looked at any particular place, or in any particular direction; but it is ordinarily for the jury to determine whether he selected a proper place for making observation, and otherwise exercised ordinary care for his own safety.

———

3. Failure of automobile operator to stop, look and listen at railway crossing as negligence *per se*, see note in Ann. Cas. 1915B; 767; 1 A. L. R. 203.

4. Duty of traveler approaching railway crossing as to place and direction of observation, see note in 37 L. R. A. (N. S.) 135.

**Railroads—Contributory Negligence Where View was Obstructed Held for Jury.**

5. In an action for death of an automobile driver at a railroad crossing, where the view was partially obstructed, *held*, that his contributory negligence was a question for the jury.

**Railroads—Whether Bell from Another Train Excused Failure to Look for Colliding Train Held for Jury.**

6. In an action for the death of an automobile driver, *held*, that it was a question for the jury whether or not the ringing of a bell of another engine, and the sight of a train, was such an influence as would divert the attention of the decedent as an ordinarily prudent person, and whether or not, if there was such diverting influence, decedent was excused for looking north instead of south during the passage of the automobile over the last fifty-five feet before reaching the track, in which space the colliding train was visible, had he looked.

From Yamhill: H. H. BELT, Judge.

Department 2.

The plaintiff D. M. Kirby brings this action as administrator of the estate of his son, Thomas Patsy Kirby, who met his death at the age of eighteen years as the result of a collision between an automobile which plaintiff's decedent was driving and a Southern Pacific electric passenger train. W. L. Scruggs, conductor of the train, is made a codefendant with the company. From a judgment on a verdict in favor of plaintiff, defendants appeal.    AFFIRMED.

For appellants there was a brief over the names of *Mr. Ben C. Dey* and *Mr. Roscoe C. Nelson,* with an oral argument by *Mr. Nelson.*

For respondent there was a brief over the names of *Mr. W. T. Vinton, Mr. Walter L. Tooze, Jr.,* and *Mr. Lamar Tooze,* with oral arguments by *Mr. Vinton* and *Mr. Walter L. Tooze, Jr.*

BEAN, J.—In stating the facts we do not find the same, but mean that there was some testimony tend-

ing to show the facts as stated. The accident occurred at Fifth and Railroad Streets, in the City of McMinnville, Oregon, on November 29, 1920, at about the hour of 12:40 P. M. The electric passenger train No. 358, consisting of two cars, was bound on the main line from Whiteson, Yamhill County, north toward Portland, and was within two blocks of the McMinnville depot when the collision occurred. After striking the automobile the train ran for a block before it stopped, and carried the automobile with it. Some part of the automobile tore up the ends of a number of the ties, "just cut them right off." The brakes of the train were applied before the car was struck. Thomas Patsy Kirby and one Trent riding in the front seat of the Ford automobile were killed, and one Lawson and Edwin Kirby sitting in the back seat of the automobile were injured, Lawson seriously and Edwin Kirby slightly.

Fifth Street runs approximately east and west and Railroad Street approximately north and south. A spur or industrial track is east of the main line and was crossed by decedent who was proceeding in a westerly direction on Fifth Street. The Southern Pacific Company operates electric warning bells at each of the intersections of the railroad at Second, Third and Fourth Streets, which are north of and parallel to Fifth Street. These streets are paved. There was no warning bell located at the Fifth Street intersection with the railroad or at any point south of Fifth Street at the time of the collision. At the corner of Fifth and "I" Streets a warning sign of the railroad was in plain view. At the railroad track another warning or crossing sign was in view. There was no traffic on Fifth Street in the vicinity of the railroad crossing at the time of the accident. The

speed of the automobile was not slackened, and its course was not altered until it swerved to the north at the instant of the impact.

An ordinance of April 1, 1919, of the City of McMinnville required the Southern Pacific Company to install and maintain a warning bell at the Fifth Street intersection, which it failed to do. By an ordinance of the city dated October 8, 1912, the speed of the trains within the corporate limits of McMinnville was limited to twelve miles per hour. The population of McMinnville, including the immediate vicinity outside of the city limits is about 5,000.

At the intersection of Railroad and Fifth Streets Gray Brothers' Warehouse is on the northeast corner, the McCullough house is on the southeast corner, a dwelling-house is on the southwest corner and a lumber-yard is on the northwest corner. In most of the blocks cornering on the intersection there are numerous buildings, trees, etc., somewhat obstructing the view of the railroad to the north and south to a person traveling west on Fifth Street. "I" Street in McMinnville is a paved street running north and south, one block east of and parallel with the railroad. Fifth Street intersects "I" Street about 325 feet east of the railroad crossing on Fifth Street.

Sixth Street is about 220 feet next south of Fifth Street and parallel thereto. There is a railroad cross-arm at the northwest corner of the intersection of Sixth Street and the railroad. The north end of a railroad trestle is about 580 feet south of the Fifth Street intersection. The trestle is 518 feet long. The city limits are about 1,500 to 2,000 feet south of the trestle. "Trip E," which starts the warning bell on Fourth Street ringing, upon the approach of

a north-bound train, is located near the north end of the trestle.

On the day of the accident the decedent and Edwin Kirby went from the school building to a restaurant at the noon hour to eat their lunch. In returning with Trent they passed east on Third Street and south on "I" Street, where they stopped to pick up their schoolmate, Lawson, at the corner of "I" and Fifth Streets, and then proceeded to the place of accident.

According to Mr. Jones, a civil engineer, the journey of the automobile after traveling ten or twenty feet from the starting point at Fifth and "I" Streets covered four sectors in so far as views of the railroad track were concerned. We will designate these sectors "A," "B," "C," and "D." From a point at 310 feet east of the main track there is a 110-foot sector "A" extending to a point 200 feet east of the track. From sector "A" the trestle and the track south of it are visible. The distance from the south end of the trestle, crossed by a train coming into McMinnville from the south, to the point of collision is between 1,016 and 1,026 feet. An intervening space of approximately 500 feet of the track is not visible from sector "A."

The next seventy-five feet traveled by the automobile, that is from a point 200 feet east of the point of collision to a point 125 feet east thereof may be designated as sector "B." From this sector the driver could see the cross-arm at the intersection of Sixth and Railroad Streets, and a train on the railroad track north of this intersection for about seventy-five feet.

Sector "C" is from a point 200 feet west of Fifth and "I" Streets, at which point the traveler reaches

the scales of Gray Brothers, where the view to the south is wholly obstructed until the traveler is opposite the northwest corner of the McCullough house, that is, a space of approximately sixty to sixty-five feet would be traveled before the traveler could see fifty feet of track south of Fifth Street, or about ninety-five feet south of the point of collision.

Sector "D" is designated in the briefs as the crucial sector, consisting of the last sixty or sixty-five feet traveled by the automobile from which the railroad track was plainly visible for a short distance.

Upon the map Mr. Jones, a civil engineer, designated a point as sixty-five feet from the point of collision. The map appears to be drawn to a scale of forty feet to the inch. The testimony shows that the automobile was traveling at the rate of twelve or fifteen miles per hour, and that the train was running at the rate, taking the highest estimate of speed, of thirty miles per hour. From this point sixty-five feet east of the point of collision, according to the scale of the map, there would be a plain view of the railroad for only ninety-five feet south of the point of collision. The jury would be warranted in finding that the car was traveling at the rate of twelve miles per hour, or that the train was traveling two and one-half times as fast as the car. These are the rates that are discussed in the briefs. The automobile and the train reached the point of collision at practically the same time. It would take less than three seconds for the train to run 125 feet. It was "gliding," and would make but little noise. If the train was traveling two and one-half times as fast as the automobile, then when the automobile was at the point sixty-five feet east of the point of contact, the train would be 162.5 feet south of that point. Therefore

if it be assumed that the decedent driving the automobile acted as an ordinarily prudent person and looked toward the south and listened at the first opportunity after passing the McCullough house, the train was out of view or about sixty-seven feet behind the McCullough house.

The warning bell at Fourth Street was ringing at, and immediately before, the time of the collision. At that time a train stood on a side-track at the depot, two blocks north of the place of collision, and could be seen by one traveling west on Fifth Street after passing Gray Brothers' Warehouse. Before reaching that point one could not see the railroad to the north owing to obstructions. Thomas Patsy Kirby, the decedent, was driving his automobile at a lawful rate of speed on the extreme right side of the street while proceeding toward and across the railroad crossing.

From the appearance of the map in evidence the driver of the automobile could see the railroad to the south while passing west from the point designated sixty-five feet east of the point of collision over a space of ten or twelve feet without seeing the train, that is, before it would be in view.

When the automobile was a distance of forty feet from the main line of the railroad track the occupants had an unobstructed view of the railroad for about 310 feet south, and this distance increased as the railroad track was neared.

Van Keuren Lawson, one of the passengers of the automobile who was injured in the collision, remembers nothing of the accident. Edwin Kirby, a boy fourteen years of age and brother of decedent, testified to the effect that after they stopped at the corner of Fifth and "I" Streets they went toward Fifth Street on the right side toward the railroad track. He was sitting on the left side of the car and

glancing out toward the trestle of the railroad he could see the trestle, but saw no train on the trestle. As they went down the street he did not see the track again until just as they got between the house there and a barn, he could see the cross-arms on Sixth Street. "There wasn't no train there either." Right on the other side of Gray's Warehouse, about halfway between the southwest corner of the warehouse and the little spur that runs up to Gray Brothers, he heard the bell on Fourth Street. When he heard the bell he looked up that way and saw a train standing at the depot. "I thought the train from the depot was starting to go south toward Whiteson." The first time he saw the train coming from the south was "just the instant before it hit us." Between Gray Brothers' Warehouse and this spur of the railroad track they were traveling at the rate of twelve to fifteen miles an hour. He heard no whistle or ringing of bell or other warning on the train coming from the south. On cross-examination he stated that when he heard that automatic bell ringing he looked toward the station and kept on looking that way, that he did not look toward the south again "because I had been glancing down that way when we had been driving down from the corner of Fifth Street and there wasn't any train on the trestle or when I looked between and seen the cross-arms in Sixth Street, there wasn't any there and I didn't think there was any coming from Whiteson." He testified that he knew the location of the track and where the automatic bell was and knew there was no automatic bell on Fifth Street.

J. B. Klatt, witness for plaintiff, testified that he saw the accident from his house on Sixth and "G" Streets, that he saw the train when it was about

fifty feet from the crossing on Fifth Street and at the same time saw the automobile about fifteen or twenty feet from the crossing.

Mr. Gorman, a brakeman on the train, stated that when the train struck the trestle, "I think he pulled her down a little." "Applied the service brake." "Well, he was gliding but at the same time I think he applied the service brake * * ."

There is a single question involved. That is whether defendants' motion for a directed verdict which was timely interposed should have been allowed. It is the position of the defendants that, conceding the railroad company was negligent in running the train at the rate of thirty miles per hour in violation of the ordinance of McMinnville, the physical facts adduced by the plaintiff establish contributory negligence of the driver as a matter of law. For the purposes of this appeal it is conceded that the defendants were guilty of negligence at the time of the collision by operating the train at a rate of speed considerably in excess of the limit provided by the ordinance of the city of McMinnville.

1. Negligence is never presumed. On the contrary, the presumption in this case is that Thomas Patsy Kirby, decedent, exercised due care and caution: *McBride* v. *Northern P. R. Co.*, 19 Or. 64 (23 Pac. 814). Applying this presumption, as Thomas Patsy Kirby is dead and there is no testimony to the contrary, the jury might believe that when he reached the point sixty-five feet east of the point of collision, he looked to the south on the track and listened, and saw no train; that while he was passing over a space ten feet to the west he might have looked and have seen no train; and that he did not hear the same. The circumstances after that indicate that the ringing of the bell at the intersection of Fourth Street with

the railroad, and the train near the depot attracted the attention of the decedent and diverted his observation from the railroad at the south. From the testimony in the case, the jury could reasonably conclude that the train was running at a terrific rate of speed, and that the decedent was driving only twelve or fifteen miles per hour and exercised due care.

2. The decedent had the right, in the absence of notice to the contrary, to assume that the defendants would observe the law regarding speed, and was not required to presume that the railroad company would violate the law: *Donohoe* v. *Portland R. R. Co.*, 56 Or. 60 (107 Pac. 964); *Palmer* v. *P. R. L. & P. Co.*, 56 Or. 262 (108 Pac. 211). If this principle is applied the decedent could rightly have determined when he was sixty-five feet from the track and could see that there was no train within ninety-five feet of the point where he would cross that he would have plenty of time to make the crossing if the train was running at a lawful rate of speed.

In *Robison* v. *O.-W. R. & N. Co.*, 90 Or. 490 (176 Pac. 594), after quoting the rule laid down in 22 R. C. L. 1040, to the effect that one approaching a crossing has a right to assume that the railway company will act with proper care, Mr. Justice BURNETT, at page 514 of the opinion, says:

"The precedents cited in support of the text all lay down the rule, in effect, that the traveler must first look and listen effectively without having seen or heard anything indicating the coming of a train, before he is authorized to assume that the company has performed its duty in that respect. * * It is only when he has first done what the law requires of him in the way of looking and listening, without seeing or hearing anything indicative of danger, that the traveler is authorized to assume that the passage is safe."

Applying the rule laid down in the latter case and in the case of *Cathcart* v. *O.-W. R. & N. Co.*, 86 Or. 250 (168 Pac. 308); and in *Olds* v. *Hines*, 95 Or. 580 (187 Pac. 586, 188 Pac. 716), it cannot be held as a matter of law in the present case that Thomas Patsy Kirby, the decedent was guilty of contributory negligence in not looking and listening for the train coming from the south without presuming such contributory negligence on his part.

3. It is a principle of law firmly established in this state as elsewhere that the failure of a person about to cross a railroad track on a highway at grade, to look and listen for an approaching train is negligence *per se* and will bar a recovery for an injury received by a collision with the train at such crossing: *Blackburn* v. *S. P. Co.*, 34 Or. 215 (55 Pac. 255). But the court cannot declare as a matter of law that a person about to cross a railway track on a street or highway at grade must have looked at any particular place, or in any particular direction first: 3 Elliott on Railroads, § 1166a; *Hecker* v. *O. R. Co.*, 40 Or. 6 (66 Pac. 270); *Donohoe* v. *P. R. R. Co.*, 56 Or. 60 (107 Pac. 964); *Marsters* v. *Isensee*, 97 Or. 567 (192 Pac. 907.)

In the Marsters case it was held that the conduct of plaintiff, to determine the question of contributory negligence, is to be measured by the conduct of an ordinarily prudent person, which is peculiarly a question for the jury.

4. Ordinarily it is for the jury to determine whether the traveler selected a proper place for making observation, and otherwise exercised ordinary care for his own safety in approaching a railroad crossing: Note to *Wallenburg* v. *Missouri Pac. Ry. Co.*, 37 L. R. A. (N. S.), pp. 136, 137, citing: *Chicago, B. & Q.*

*R. Co.* v. *Pollock*, 195 Ill. 156 (62 N. E. 831, affirmed in 93 Ill. App. 483); *Lake Shore & M. S. R. Co.* v. *Anthony*, 12 Ind. App. 126 (38 N. E. 831); *Nosler* v. *Chicago, B. & Q. R. Co.*, 73 Iowa, 268 (34 N. W. 850); *Case* v. *Chicago G. W. R. Co.*, 147 Iowa, 747 (126 N. W. 1037); *Greany* v. *Long Island R. Co.*, 101 N. Y. 419 (5 N. E. 425); *Wheeling & L. E. R. Co.* v. *Parker*, 29 Ohio C. C. 1; *McNeal* v. *Pittsburg & W. R. Co.*, 131 Pa. 184 (18 Atl. 1026); *Bare* v. *Pennsylvania R. Co.*, 135 Pa. 95 (19 Atl. 935); *Ellis* v. *Lake Shore & M. S. R. Co.*, 138 Pa. 506 (21 Atl. 140, 21 Am. St. Rep. 914); *Urias* v. *Pennsylvania R. Co.*, 152 Pa. 326 (25 Atl. 566); *McGill* v. *Pittsburgh & W. R. Co.*, 152 Pa. 331 (25 Atl. 540); *Whitman* v. *Pennsylvania R. Co.*, 156 Pa. 175 (27 Atl. 290); *Pennsylvania & N. Y. Canal & R. Co.* v. *Huff*, 6 Sadler (Pa.), 60 (8 Atl. 789); *Lehigh & W. Coal Co.* v. *Lear*, 6 Sadler (Pa.), 272 (9 Atl. 267). In the same note the rule is laid down that it is not ordinarily possible to affirm the precise number of feet from the crossing at which a traveler must look and listen, the test being ordinary care in selecting the place; citing, *Antonian* v. *Southern Pac. Co.*, 9 Cal. App. 718 (100 Pac. 877); *Malott* v. *Hawkins*, 159 Ind. 127 (63 N. E. 308); *Chicago, I. & L. R. Co.* v. *Turner*, 33 Ind. App. 264 (69 N. E. 484.)

It is held that while it is the duty of a traveler to look both ways, nevertheless where greater danger is to be expected from one direction than the other he is justified in paying more attention to that direction: *St. Louis, I. M. & S. R. Co.* v. *Dillard*, 78 Ark. 520 (94 S. W. 617); note, 37 L. R. A. (N. S.), p. 147.

In a note on page 146, 37 L. R. A. (N. S.), we read:

"But where obstructions prevent a view until close to the track, the mere fact that the traveler looks in one direction first, and it is too late to avoid injury

when he turns to look the other way, when by looking the other way first he would have avoided the injury, is not sufficient to charge him with contributory negligence, as the direction in which he should look first, and the frequency with which he should change the direction of his observation, depend upon circumstances, and are for the jury to determine. *Choctaw, O. & G. R. Co.* v. *Baskins,* 78 Ark. 355 (93 S. W. 757); *Haupt* v. *New York C. & H. R. R. Co.,* 20 Misc. 291 (45 N. Y. Supp. 666); *Lewis* v. *New York, L. E. & W. R. Co.,* 1 Silv. Sup. Ct. 393 (5 N. Y. Supp. 313); *Young* v. *New York, L. E. & W. R. Co.,* 107 N. Y. 500 (14 N. E. 434.)"

It is held that the law does not arbitrarily and invariably fix the distance at which the plaintiff should have commenced to look and listen, so long as he does so at a sufficient distance to discover the approach of a train and avoid injury in the exercise of reasonable and ordinary care; and whether plain-tiff did exercise that care under the circumstances of the case is a question for the jury and not for the court: *Wallenburg* v. *Missouri P. R. Co.,* 86 Neb. 642 (126 N. W. 289, 37 L. R. A. (N. S.) 135, 149); *Hecker* v. *Oregon R. Co.,* 40 Or. 6 (66 Pac. 270); *Schwanen-feldt* v. *Chicago, B. & Q. R. Co.,* 80 Neb. 790 (115 N. W. 285); *Moore* v. *Chicago, St. P. & K. C. R. Co.,* 102 Iowa, 595 (71 N. W. 569); *Nichols* v. *Chicago, B. & Q. R. Co.,* 44 Colo. 501 (98 Pac. 808); *Boyd* v. *St. Louis Southwestern R. Co.,* 101 Tex. 411 (108 S. W. 813); *Farrell* v. *Erie R. Co.,* 70 C. C. A. 396 (138 Fed. 28, 29); *Oldenburg* v. *New York C. & H. R. R. Co.,* 124 N. Y. 414 (26 N. E. 1021); *Bonnell* v. *Delaware, L. & W. R. Co.,* 39 N. J. L. 189.

But in practically every jurisdiction in which the courts have at one time or another held that the failure of a person to stop, look and listen before attempting to cross a railroad track was negligence

precluding recovery, it has been held that the rule is not absolute, or at least decisions have been rendered showing that it does not apply under all circumstances: Note, 1 A. L. R. Ann., pp. 205, 206–208; *Blackman* v. *Southern Pac. Co.*, 34 Or. 215 (55 Pac. 225); *Long* v. *Pac. R. & N. Co.*, 74 Or. 502 (144 Pac. 462, 145 Pac. 1068, L. R. A. 1915F, 1151); *Hall* v. *Seattle R. & S. R. Co.*, 60 Wash. 162 (110 Pac. 804); *McKinney* v. *Port Townsend & P. S. R. Co.*, 91 Wash. 387 (158 Pac. 107), note, 1 A. L. R. Ann., p. 211.

In 1 A. L. R. Ann., note, after citing hundreds of cases, at page 218 the author states:

"To briefly summarize the foregoing authorities it may be said that there is no jurisdiction in whch the courts have, in every instance, held that a failure to stop, look, and listen before crossing a railroad track was negligence *per se,* irrespective of the surrounding circumstances. However, in Pennsylvania, the rule is so strictly applied that it is almost without exception."

There is a marked controversy in the briefs as to whether or not the lilac bush at the northwest corner of the McCullough house obstructs the view from a point on Fifth Street about sixty or sixty-five feet from the point of contact. While our first impression was that it was understood this shrub obstructed such view, we find in the reply brief of defendant a map of the Fifth Street railroad crossing and surroundings, showing a line drawn from a point on Fifth Street sixty feet east of the point of collision, past the McCullough house, extending through the diagram of the lilac bush and ignoring the same as an obstruction to the view, to a point on the railroad 184 feet south of the point of collision. This, as we understand, represents the contention of defendant to the effect that when the automobile was at the point

named on Fifth Street, according to the speed of the car and the train, the train would be in view from that point.

The testimony in regard to the view from this point on Fifth Street, given by Engineer Jones, who was also city engineer of McMinnville, is as follows:

"Q. Now then, how far is it from that point opposite the scales noted on your plat going westward, before you can see a point south of Fifth Street on the tracks again, how far do you have to go?

"A. Well now, how far south—of course at that point, standing in the center or north of the center of the street as indicated here, the line of vision will begin to strike south of the south line of Fifth Street, and as you approach the railroad track the nearer you approach the farther south your vision will strike; there will have to be some definite point specified there.

"Q. Well, being able to see the railroad at a point 50 feet south of the south line of Fifth Street, where would you have to be if on the north side of Fifth Street, traveling west, in order to see an object at that point?

"A. Well you would have to be 60 or 65 feet from the railroad track.

"Q. Will you indicate that on the plat and mark '50–65' and put it in a circle?   [Witness marks plat.]

"Q. Now, from this point, which you have designated on the plat, right below the southwest corner of what is designated as Gray Brothers' Warehouse, by the figures '50–65,' from that point, as I understand you, you say you can see south on the railroad for a distance of 50 feet?

"A. Yes.

"Q. What is your vision from that point north toward Fourth Street and the depot?

"A. There is a clear vision; you can see—well— you can see as far north as Fourth Street and I think as far north as the depot: I haven't observed it with that in mind, from that point."

We insert a map made by Engineer Jones, taken from defendants' brief, with some figures and lines of our own added. Whatever the dispute may be in regard to this obstruction it was a question for the jury. It is clear that there was some testimony in conflict with the position taken by defendants.

The facts in the present case differ from those in the case of *Robison* v. *O.-W. R. & N. Co.*, 90 Or. 490 (176 Pac. 590). In the Robison case the only place for the plaintiff Weygandt, the driver of the automobile, to look for the approach of a train was when his car was within about four feet from where the train would pass, and if he had looked he would have seen the train. The accident occurred at a country crossing where the train was not governed by speed regulations. The court held:

"It was Weygandt's duty to look upon the only place whence the danger would come, viz., upon the track, for which view he had safe and ample opportunity before going in front of the train: *Cathcart* v. *Oregon-Wash. R. & N. Co.*, 86 Or. 250 (168 Pac. 308). He was guilty of contributory negligence in not looking from that place of safety, stopping if necessary for that purpose, before advancing to the point of collision. His neglect of that duty cost him his life and his estate must bear the loss."

But in the present case as we have seen, plaintiff in passing over a space of about ten feet in approaching the railroad track could look upon the track and ascertain whether there was a train within ninety-five feet of the place of crossing, and see no train.

In principle the case of *Cathcart* v. *O.-W. R. & N. Co.*, 86 Or. 250 (168 Pac. 308), was the same as the Robison case, as shown from the opinion of Mr. Justice BURNETT in that case at page 257:

"It was impossible for the plaintiff to look westward along the track on which the switch-engine was running until he had proceeded far enough to see past the engine attached to the work train. Reduced to its lowest terms the situation is one where the plaintiff thoroughly familiar with the crossing and its surroundings approached in his auto truck in front of

the standing locomotive upon which its bell was continually ringing, unable to see through the work train or its locomotive and continuing to drive slowly toward the track and to collision with the oncoming switch-engine.''

It was there held:

"There can be no reasonable question but that the plaintiff whose hearing was interfered with in a material degree by the ringing of the bell on the standing locomotive went forward experimentally and collided with the switch-engine. He cannot complain if the experiment turned out disastrously.''

In that case the duty of a traveler stopping when necessity requires, is discussed.

In *Olds* v. *Hines,* 95 Or. 580 (187 Pac. 586, 188 Pac. 716), as shown by the opinion at pages 586 and 587:

"The only conclusion to be drawn from the testimony, therefore, is that as a matter of fact the train was plainly visible in the 600 foot space at the time the plaintiff says he looked in that direction and saw nothing. Does this present a question for the jury and relieve the judge of the responsibility of deciding the case on a motion for nonsuit?''

It was held that it did not. The general rule is laid down by Mr. Justice BURNETT at page 585, as follows:

"We remember also that it is a binding principle that the plaintiff is entitled to the benefit of whatever his testimony tends to prove, although his witnesses may contradict each other, and that if any reasonable construction of the evidence on his behalf, or any part thereof, shall fairly tend to show that he is entitled to recover, it is the duty of the court to submit the question to the jury. On the other hand, if there can be no reasonable conclusion other than that the plaintiff himself was remiss in his duty at the time

of the accident, it is incumbent upon the court so to declare, and order a nonsuit.''

A railroad track is a signal of danger. It is such a notice as would put a prudent man on guard. When he receives this notice it is his duty to look and listen before venturing on to the track, or, in other words, he must act as an ordinarily prudent man would act under like circumstances if dangers of other kinds were threatening him.

The circumstances and the testimony in the present case, judging somewhat by the conduct of the younger brother of the decedent, indicate that Thomas Patsy Kirby, the decedent, did look in both directions for the approach of a train before he approached the track, seeing there was none on the track to the south, at a distance sufficient for him to cross in safety, if a train were approaching at a lawful rate.

5. The question of whether or not Thomas Patsy Kirby, the decedent, acted as an ordinarily prudent man would act under like circumstances, or was guilty of contributory negligence in this case, was a question of fact for the jury to determine and not one of law for the court: *Marsters* v. *Isensee,* 97 Or. 567 (192 Pac. 907); *Durbin* v. *Oregon R. & N. Co.,* 17 Or. 5 (17 Pac. 5, 11 Am. St. Rep. 778, 32 Am. & Eng. R. Cas. 149, 12 Am. Neg. Cas. 514); *McBride* v. *N. P. R. R. Co.,* 19 Or. 64 (23 Pac. 814, 42 Am. & Eng. R. Cas. 146); *Hecker* v. *Oregon R. R. Co.,* 40 Or. 6 (66 Pac. 270, 23 Am. & Eng. R. Cas. (N. S.) 33); *Schleiger* v. *N. T. Co.,* 43 Or. 13 (72 Pac. 324, 15 Am. Neg. Rep. 688); *Donohoe* v. *P. R. Co,* 56 Or. 58 (107 Pac. 964, 60 Am. & Eng. R. Cas. (N. S.) 66); *Palmer* v. *P. R. L. & P. Co.,* 56 Or. 262 (108 Pac. 211, 59 Am. & Eng. R. Cas. (N. S.) 68); *Doyle* v. *S. P. Co.,* 56 Or. 495,

508 (108 Pac. 210); 2 Shearman & Redfield on Negligence (6 ed.), 1195, 1200.

In *McBride* v. *N. P. R. R. Co.*, 19 Or. 64, at page 69 (23 Pac. 816), it is stated by Mr. Justice LORD:

"While it is the duty of a traveler on the road, when about crossing a railroad track, to observe the proper care and diligence by looking and listening, or both, as the necessity of the situation may require, for his safety, yet where the evidence is silent as to what the party injured in fact did on the occasion, it is not to be presumed that he recklessly exposed his own life, or attempted to cross the track in the face of an approaching train."

In the Hecker case, 40 Or. 6 (66 Pac. 271), Mr. Chief Justice BEAN, at page 9, said:

"Although it is negligence for a traveler not to look and listen for approaching trains before attempting to cross a railway track, the law does not undertake to determine whether he shall do so at any particular place or given distance from the crossing. It is only required that he shall look and listen at the time and place necessary in the exercise of ordinary care; and this is generally a question for the jury, under all the circumstances of the particular case; for, as said by the Supreme Court of New York: 'If, in case of an accident at a crossing, it appears that the person injured did look for an approaching train, it would not necessarily follow as a rule of law that he was remediless because he did not look at the precise place and time when and where looking would have been of the most advantage. Many circumstances might be shown which could properly be considered by the jury in determining whether he exercised due and reasonable care in making his observation.' "

6. It was a question of fact for the jury to determine whether or not the ringing of the bell at the intersection of Fourth Street and the sight of the

train in that direction near the depot was such an influence as would divert the attention of the decedent as an ordinarily prudent person in the light of the circumstances as they then appeared to him, and whether or not, if there was such diverting influence, the decedent as driver of the Ford automobile was excused for looking toward the north instead of toward the south during the passage of the automobile over the last fifty-five feet before reaching the track: 2 Shearman & Redfield on Negligence (6 ed.), 1195; 33 Cyc. 1121; Elliott on Railroads, § 1166a, p. 357; *D. L. & W. R.* v. *Welshman,* 229 Fed. 82 (L. R. A. 1916E, 816); *Cassida* v. *Oregon R. & N. Co.,* 14 Or. 551 (13 Pac. 438); *Palmer* v. *D. etc. R. Co.,* 56 Mich. 1 (22 N. W. 88); *Jennings* v. *St. Louis I. R.,* 112 Mo. 268 (20 S. W. 490); *Bowen* v. *N. Y. C. R.,* 89 Hun, 594 (35 N. Y. Supp. 540); *L. S. & M. S. R. Co.* v. *Johnson,* 135 Ill. 641 (26 N. E. 510).

The defendants assume that Thomas Patsy Kirby did the same as Edwin Kirby in regard to observing the approach of a train. The jury might well have believed that no ordinarily careful driver of an automobile would cross a railroad track without looking for the approach of a train himself, and not trust wholly to another occupant of the car to make the observation for him, thereby entailing the danger of misunderstanding the information in regard thereto, that is, whether the occupant of the car would say, "There is a train," or "There is no train," in other words, rely upon hearsay. The jury had the right to consider the general conduct of an ordinarily prudent man.

The motion for a directed verdict in favor of defendants was properly overruled.

It follows that the judgment of the trial court is affirmed.    .    AFFIRMED.

McBRIDE, C. J., and BROWN and McCOURT, JJ., concur.